**BECTON DICKINSON AND COMPANY, Plaintiff–Appellant,**

v.

**C.R. BARD, INC., Defendant–Appellee.**

**No. 90–1013.**

United States Court of Appeals, Federal Circuit.

Dec. 13, 1990.

James W. Geriak, Lyon & Lyon, Los Angeles, Cal., argued for plaintiff-appellant. With him on the brief was Paul H. Meier. Also on the brief was Thomas J. Morgan, Lyon & Lyon, Washington, D.C.

John D. Foley, Morgan & Finnegan, New York City, argued for defendant-appellee. With him on the brief were Warren H. Rotert, Christopher E. Chalsen and Karl M. Zielaznicki. Also on the brief was Renate A. Coombs, Shanley & Fisher, Morristown, N.J., of counsel.

Before NIES, Chief Judge,* PLAGER, Circuit Judge, and WILL, Senior District Judge.**

* Chief Judge Nies assumed the position of Chief Judge on June 27, 1990.
** Senior Judge Hubert L. Will of the Northern District of Illinois, sitting by designation.

NIES, Chief Judge.

Becton Dickinson and Company (BD), appeals the final decision of the United States District Court for the District of New Jersey, *Becton Dickinson and Co. v. C.R. Bard, Inc.*, 719 F.Supp. 1228, 12 USPQ2d 1678 (D.N.J.1989), (Wolin, J.), granting summary judgment in favor of C.R. Bard, Inc. on a charge of infringement of all claims of BD's United States Patent No. 3,789,841 ('841). We affirm.

## I

The '841 patent relates to guide wires for use in treating blocked arteries through a technique known as the Seldinger catheterization procedure. In performing the Seldinger procedure, a physician directs a guide wire to the occluded area of the artery or arterial branch, "[slides] a balloon catheter over the guide wire to the site of the blockage, withdraws the guide wire and expands the balloon in order to expand the artery." *Becton Dickinson*, 719 F.Supp. at 1230, 12 USPQ2d at 1679. The invention of the '841 patent represents an improvement in this art.[1]

The '841 patent contains ten claims, all of which are asserted in this suit: independent claim 1, claims 2–5 which are dependent on claim 1, independent claim 6, independent claim 7, and claims 8–10 which are dependent on claim 7. During the course of pretrial proceedings, Bard filed three separate motions for summary judgment on the grounds of, respectively, unenforceability due to inequitable conduct, invalidity of all claims for obviousness, and noninfringement of all claims. The district court ruled on all three motions in the above cited opinion. The court held that a genuine issue as to the patentee's wrongful intent precluded a grant of summary judgment of unenforceability due to inequitable conduct. The court also held that a genuine issue of fact precluded summary judgment on the issue of obviousness of claim 1

1. For further information concerning catheterization procedures, see *C.R. Bard, Inc. v. Advanced Cardiovascular Sys.*, 911 F.2d 670, 671, 15 USPQ2d 1540, 1541 (Fed.Cir.1990).

and all claims dependent thereon. With respect to claims 6 and 7, the court stated that "claims 6 and 7, if viewed as the independent claims that they purport to be, are invalid for obviousness under 35 U.S.C. § 103." *Becton Dickinson*, 719 F.Supp. at 1243, 12 USPQ2d at 1690. However, the court then explained that if claims 6 and 7 were rewritten as dependent on claim 1, summary judgment of invalidity could not be granted. Finally, with respect to claim 1 and all claims dependent thereon, including the court-drafted dependent claims 6 and 7, the court held that Bard was entitled to summary judgment of noninfringement.

Following issuance of its opinion, the district court ordered entry of its judgment which reads, in its entirety, as follows:

> For the reasons set forth in the opinion of the Court filed herewith,
>
> It is on this 28th day of July, 1989,
>
> ORDERED that summary judgment is granted in favor of defendant C.R. Bard, Inc. and against Becton Dickinson and Company.

*Becton Dickinson*, 719 F.Supp. at 1249, 12 USPQ2d at 1695.

In its appeal, BD argues that the district court's grant of summary judgment rests solely on the ground of noninfringement of claims 1–10, and it advances various reasons for reversal. Principally, it argues that the district court misinterpreted various words in the claims and, with respect to claims 6 and 7, that the court erroneously imported limitations from claim 1 in finding no infringement and that the court made no finding on infringement of claims 6 and 7 as independent claims. Lastly, BD treats the district court's statements with respect to the invalidity of independent claims 6 and 7, in effect, as dicta not reflected in the judgment and urges that no validity issues are before us.

Bard maintains that the district court properly interpreted claim 1 in finding no infringement and urges that we uphold the judgment on the grounds of noninfringement with respect to claims 1–5. Bard agrees that the district court made no finding of infringement of claims 6 and 7 as independent claims. However, Bard asserts that the court's judgment rested on its determination that, as independent claims, claims 6 and 7 were invalid for obviousness. Bard argues further that BD, having failed to challenge the district court's invalidity rulings in its main brief, has waived review of that part of the court's judgment. Alternatively, Bard urges affirmance of the judgment on the ground of the invalidity of claims 6–10, even if the district court's judgment did not rest on invalidity, because Bard raised the issue below in its motion for summary judgment and the record supports its position. Bard further asserts that BD did not argue in its reply to Bard's motion for summary judgment that dependent claims 8–10 were valid even if independent claim 7 were to be held invalid and, thus, the validity of claims 8–10 has never been a separate issue in this case.

### Issues

1. Did the district court properly grant summary judgment of noninfringement as to any claims?

2. Did the district court's judgment encompass its holding of the invalidity of independent claims 6 and 7?

3. Did BD waive review of the issues of invalidity?

## II

### Summary Judgment Standard

■ As in other cases, the grant of summary judgment under Fed.R.Civ.P. 56,[2] is appropriate in a patent case where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 835, 221 USPQ 561, 564 (Fed.Cir.

---

**2.** Fed.R.Civ.P. 56(c) provides in pertinent part: The judgment sought [on a motion for summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

1984) (summary judgment of invalidity); *Townsend Eng'g Co. v. HiTec Co.*, 829 F.2d 1086, 1089, 4 USPQ2d 1136, 1138 (Fed.Cir. 1987) (summary judgment of noninfringement). As the Supreme Court explained in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), "[T]he substantive law will identify which facts are material.... [and a fact will be considered genuinely disputed] if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

## III

### *Noninfringement of Claim 1*

■ To establish infringement of a patent, every limitation set forth in a claim must be found in an accused product or process exactly or by a substantial equivalent. *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1259, 9 USPQ2d 1962, 1967 (Fed.Cir.1989). Determination of patent infringement is a two-step process: "the meaning of the claims must be learned from a study of all relevant patent documents; and the claims must be applied to the accused structures." *Caterpillar Tractor Co. v. Berco, S.P.A.*, 714 F.2d 1110, 1114, 219 USPQ 185, 187 (Fed.Cir.1983). Except where evidence pertinent to a claim's interpretation creates a factual dispute, "claim interpretation may be resolved as an issue of law by the court on summary judgment...." *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1580, 12 USPQ2d 1382, 1386 (Fed.Cir.1989).

The components of the guide wires of the '841 invention are described in terms of having a proximal end, the end of the guide wire *closer* to the doctor during its use, and a distal end, the end of the guide wire *further* from the doctor during use. Specifically, claim 1 of the '841 patent reads:

(1) A flexible guide wire, comprising:

(2) an elongated inner core wire having a proximal portion and a distal portion;

(3) a coil spring enclosing the distal portion and fixably attached thereto the coil spring including a proximal end and distal end; and

(4) a plastic jacket enclosing and engaging the proximal portion the jacket including a proximal end and a distal end, the jacket distal end *terminating at the coil spring proximal end* and being *substantially equal in diameter* to the coil spring such that the jacket forms an *extension* of the coil spring. (Emphasis added.)

The dispute centers on paragraph numbered 4 above and, more particularly, on the district court's interpretation of the limitations with respect to the plastic jacket "terminating at" the proximal end of the coil spring, "being substantially equal in diameter to" the coil spring and "form[ing] an extension" thereof. The accused guide wires are coated with a thin (maximum .0004 inches) discontinuous coating of Teflon primer paint which is sprayed over the entire guide wire. The district court found no genuine issue of fact in determining that the Bard guide wires do not meet the limitations respecting the plastic jacket either literally or equivalently. Accordingly, the district court held that Bard was entitled to judgment of noninfringement of claim 1 and all claims dependent thereon as a matter of law.

### *Literal Infringement*

■ BD devotes the principal portion of its brief to asserted error in the district court's claim interpretation which, per BD, resulted in erroneous rulings of no literal infringement. While it may be debatable whether or not Bard's device satisfies the limitations that the plastic jacket "encloses" and "engages" the core wire and whether or not the Teflon coating is a "jacket" which the district court construed favorably to BD, there can be no dispute that the Bard device has no "plastic jacket.... *terminating* at the coil spring proximal end...." (emphasis added). As indicated, the Bard device is covered by a Teflon coating which extends without a break over the core and the coil spring.

■ BD argues that the Teflon coating over the coil spring in Bard's device should be treated as an "additional element beyond those recited in the claims" citing

*Radio Steel & Mfg. Co. v. MTD Prods. Inc.*, 731 F.2d 840, 221 USPQ 657 (Fed. Cir.), *cert. denied*, 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 62 (1984) and *Uniroyal, Inc. v. Rudkin–Wiley Corp.*, 837 F.2d 1044, 5 USPQ2d 1434 (Fed.Cir.), *cert. denied*, 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988) and, therefore, since Teflon covers the proximal end of the core wire, all limitations of the claim are met.

■ BD is correct that where the claim language reads directly on the accused device, additional structure present in such device may, in appropriate circumstances, be disregarded in an infringement analysis. *See A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 218 USPQ 965 (Fed.Cir.1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 171 (1984); *Uniroyal*, 837 F.2d at 1057, 5 USPQ2d at 1444. Here, however, BD's position would require disregarding *not additional structure in the accused device* but *specific limitations* for the jacket set forth *in the claim*, namely, "the plastic jacket distal end *terminat[es]* at the coil spring *proximal end.*" There is no factual dispute that the "distal end" of the "jacket" of Bard's device does not terminate at the "proximal end" of the coil spring.

The failure to satisfy the "terminating" limitation carries over into the "extension" limitation. BD simply argues that a plastic jacket covering the core satisfies the limitation of being an "extension" of the coil spring if the outside diameter of the covered core is "substantially equal in diameter to the coil spring." Because the Teflon coating on the spring in the Bard device is so thin, per BD, the core *coated* with Teflon is "substantially equal in diameter" to the coil spring *without* the Teflon. This argument of BD points up the tortured and truncated interpretation BD must give to the claim to assert literal infringement. Satisfaction of the "jacket" limitations is not simply a matter of the outside diameter of the core and coating being substantially equal to that of the coil spring. The claim requires that the distal end of the jacket terminate at the proximal end of the coil spring which limitation is plainly not satis-

fied by any possible interpretation of the diameter limitation.

■ BD argues that the district court erred by requiring the plastic jacket to have an *inside* diameter comparable to that of the coil spring, a limitation not set forth in the claim. We do not find reversible legal error in the district court's analysis. The court did say the plastic jacket had to have more thickness than the Teflon coating of the Bard device in order to function as an *extension* of the coil spring. However, the court specifically *disclaimed* a requirement that the plastic jacket have the same, or even approximately the same, *inside* diameter as that of the coil spring. In any event, this error, if it is error, does not mandate reversal of the literal noninfringement ruling.

■ BD points to an additional affidavit of its expert Dr. Michael J. Pappas, filed with BD's motion for reconsideration, as evidence creating a material fact issue on claim interpretation. Not only was this proffered evidence untimely but also it amounts to no more than a legal opinion, not fact evidence, on what constitutes an "extension" in the context of the claim. A mere dispute concerning the meaning of a term does not itself create a genuine issue of material fact. *Johnston*, 885 F.2d at 1579, 12 USPQ2d at 1385; *Townsend Eng'g*, 829 F.2d at 1089–90, 4 USPQ2d at 1139.

### Doctrine of Equivalents

■ The determination of no literal infringement does not end the infringement inquiry in this case. BD alleged that the Bard devices infringe claim 1 by application of the doctrine of equivalents. Under that doctrine, an accused product that does not literally infringe a claim may infringe "if it performs substantially the same function in substantially the same way to obtain the same result." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097, 85 USPQ 328, 330 (1950).

■ In finding no infringement under the doctrine of equivalents, the district

court found that the accused product did not perform the work of the patented device "in substantially the same *manner.*" *Becton Dickinson*, 719 F.Supp. at 1249, 12 USPQ2d at 1695 (emphasis in original). To prevail on this issue, Bard had to point out the absence of evidence in the record directed to proof of a matter on which BD bore the burden of proof and which was necessary to establish its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. at 2510; *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1560, 7 USPQ2d 1548, 1551 (Fed.Cir. 1988). Here, BD bore the burden of proving that the Teflon coating of Bard's device was equivalent to the jacket structure required by the limitations of the claim. Only if all limitations of the claim are satisfied at least equivalently can it be found that the two devices work "in substantially the same way." *Graver Tank*, 339 U.S. at 608, 70 S.Ct. at 856; *LaBounty Mfg., Inc. v. United States Int'l Trade Comm.*, 867 F.2d 1572, 1577, 9 USPQ2d 1995, 1999 (Fed. Cir.1989); *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934, 4 USPQ2d 1737, 1739 (Fed.Cir.1987) (in banc), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988).

■ Nowhere does BD recognize the controlling precedent on what is required to prove infringement under the doctrine of equivalents set out by the in banc court in *Pennwalt.* That case and its progeny are simply ignored. Under the test for infringement defined in *Pennwalt*, 833 F.2d at 935, 4 USPQ2d at 1739, BD was required to proffer evidence that specific structure in Bard's device met all the disputed limitations at least equivalently. BD avoids any specific comparison in this respect, arguing only that because the jacket and proximal portion of the core wire of Bard's product are in engaging relationships, the Bard device performs the same function in the same way to achieve the same result as in the invention. However, such engagement is a specific *independent* limitation of the claim. Essentially BD asserts that some of the limitations required for the jacket are not necessary to achieve the end result. That may be true but limitations of the axial extent of the jacket and the forming of an extension of the spring appear to have been necessary for patentability. But whether necessary or not, after issuance, all limitations in a claim are material and must be met exactly or equivalently in an accused device to find that the accused device works in the same way.[3] *Id.; Corning Glass Works*, 868 F.2d at 1259, 9 USPQ2d at 1968; *Lemelson v. United States*, 752 F.2d 1538, 1551, 224 USPQ 526, 533 (Fed.Cir.1985). BD's standard for finding infringement under the doctrine of equivalents is legally erroneous and, thus, its infringement argument fails as a matter of law. There being no genuine issue of material fact with respect to at least one structural limitation not being found exactly or equivalently in the accused device, the grant of summary judgment was not error.

■ The holding of noninfringement of claim 1 applies as well to all claims dependent on claim 1. *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n. 9, 10 USPQ2d 1201, 1207 n. 9 (Fed.Cir.1989) ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim."). However, both parties agree that claims 6–10 are not dependent on claim 1 and that the noninfringement analysis in respect to claim 1 is not applicable to claims 6–10. Thus, the judgment, to the extent based on noninfringe-

3. This well-settled principle was succinctly stated in *Water Meter Co. v. Decker*, 101 U.S. 332, 337, 25 L.Ed. 1024 (1879) as follows:

Our law requires the patentee to specify particularly what he claims to be new, and if he claims a combination of certain elements or parts, we cannot declare that any one of these elements is immaterial. The patentee makes them all material by the restricted form of his claim. We can only decide whether any part omitted by an alleged infringer is supplied by some other device or instrumentality which is its equivalent."
*See also* other precedent cited in *Pennwalt*, 833 F.2d at 949–54, 4 USPQ2d at 1752–1755 (Nies, J., concurring).

ment, is affirmed only with respect to claims 1–5.

## IV

### *Invalidity Issues*

 In its opening brief, BD repeatedly maintains that no issue with respect to the validity of any claim of the '841 patent is before this court. Indeed, an entire section of BD's brief is devoted to the proposition that the judgment of the court does not encompass any validity issues.[4] BD's argument that validity was not before us was made in obvious anticipation that Bard would respond that the district court held claims 6–7 invalid. It was no surprise then that Bard dutifully took that position. However, Bard not only urged that the judgment rests on a determination of the invalidity of claims 6 and 7 but also maintained that BD waived its right of review of the district court's invalidity rulings by not raising them in its opening brief.[5]

The initial question is whether the judgment of the district court includes a ruling that claims 6 and 7 were invalid. We conclude that it does.

 The debate on this matter arises from certain language in the district court opinion. After proceeding to make an analysis under *Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–694, 15 L.Ed.2d 545 (1966), the court concluded that material issues of fact were raised with respect to claim 1 but that the broader claims 6 and 7 were invalid under 35 U.S.C. § 103 (1988). It then stated:

> Rather than discard Claims 6 and 7 entirely, however, the Court will view them as dependent on claim 1.

The court proceeded to rewrite claims 6 and 7 to add specific language making them dependent on claim 1.[6]

The court concluded its analysis with statements that as independent claims, claims 6 and 7 were invalid for obviousness, but as dependent on claim 1, the fact issues, *i.e.*, those pertaining to claim 1, precluded summary judgment of invalidity. The court then went on to hold, as a matter of law, that claim 1 and all its dependent claims were not infringed by Bard and stated that, by this holding, the "factual issues as to ... invalidity" were "moot." *Becton Dickinson*, 719 F.Supp. at 1249, 12 USPQ2d at 1695. The judgment order issued on July 28, 1989, with the above quoted open-ended language that summary judgment was granted in favor of C.R. Bard. No specific language respecting validity or infringement appears in the judgment.

If these were all the facts we had to examine, we might find enough ambiguity in the situation to give credence to BD's position that the court's judgment did not ultimately rest on a holding that claims 6

---

4. BD did, however, suggest that we provide guidance to the district court in connection with the issue of obviousness inasmuch as it sought a remand of the case.

5. Also, Bard asserted that BD has never argued the validity of dependent claims 8–10 separately from the validity of underlying independent claim 7 despite Bard's presentation of specific argument and evidence of their invalidity. This is undisputed and we, therefore, do not deal with claims 8–10 separately. *Cf.*, *Shelcore v. Durham Indus.*, 745 F.2d 621, 223 USPQ 584, 586–87 (Fed.Cir.1984); *Gardner v. TEC Sys.*, 725 F.2d 1338, 1350, 220 USPQ 777, 786 (Fed.Cir.), *cert. denied*, 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 60 (1984).

6. Specifically, claim 6 as issued reads:
 A flexible guide wire, comprising:
 an elongated inner core wire having a proximal portion and a tapered distal portion;
 a coil spring enclosing the distal portion and fixably attached thereto; and
 a plastic jacket enclosing and engaging the proximal portion.
 and the court redrafted it to read:
 A guide wire as described in claim 1, wherein the inner core wire has a proximal portion and a tapered distal portion.
 *Becton Dickinson*, 719 F.Supp. at 1243, 12 USPQ2d at 1690. Claim 7 differs from 6 only in its additional requirement for a uniform diameter in the proximal portion of the guide wire.
 Before us, both parties disclaim responsibility for the district court's misguided theory that it should or could rewrite the claims. Nothing in any precedent permits judicial redrafting of claims. At most there are admonitions to *construe* words in claims narrowly, if possible, so as to sustain their validity. *Carman Indus. v. Wahl*, 724 F.2d 932, 937 n. 5, 220 USPQ 481, 485 n. 5 (Fed.Cir.1983).

and 7 were invalid. However, following entry of the judgment, BD moved for reconsideration. BD's brief in support of its motion had only two sections: "A. Infringement of Claim 1" and, "B. Validity of Claims 6 and 7." BD explicitly acknowledged that the decision "granted Bard's Summary Judgment Motion as to the invalidity of Claims 6 and 7 ..." and that "the Court erred in its decision that claims 6 and 7 are invalid for obviousness under 35 U.S.C. § 103 for numerous reasons and BD reserves its right to appeal in this respect." Bard's response brief similarly addressed validity concluding with the statement, "The court properly interpreted the claims as a whole including these limitations in reaching its decision that claims 6 and 7 were invalid...." The district court denied BD's motion for reconsideration by order, stating "for the reasons in the Court's July 28, 1989, opinion and *for the additional reasons* given in Bard's brief in opposition to the motion for reconsideration." (Emphasis added.)

Neither party made any argument concerning infringement/noninfringement or validity/invalidity of the hypothetical dependent claims 6 and 7 which the district court had interjected into its opinion.

The above described events negate BD's assertion, made only on appeal, that the judgment does not rest on the court's conclusion that independent claims 6 and 7 were invalid. The parties themselves interpreted the judgment to be based on that invalidity ruling when the judgment was issued. BD's request for reconsideration of the judgment did not seek *clarification* of the grounds for the judgment but rather was directed to the merits of the court's validity decision. Bard's reply to the reconsideration motion reiterated reasons to hold claims 6 and 7 invalid which the court adopted in denying BD's motion. Thus, it was incumbent upon BD, as Bard urges, to raise the issue of validity of claims 6 and 7 in its opening brief if it wished to challenge the entirety of the judgment. Instead, BD chose to argue that the judgment had a limited scope thereby setting up for attack the easy target of a meaningless ruling of noninfringement of hypothetical claims.

While the district court was clearly misguided in redrafting claims 6 and 7 to make them dependent on claim 1, both parties simply ignored that part of the district court's opinion in post-trial proceedings. To now elevate the court's ruling on infringement of nonexistent claims into the sole ruling on claims 6 and 7 is unwarranted. BD had full opportunity to point out the error in this part of the district court's decision in its post-trial motion for reconsideration. It chose not to do so. It directed its efforts exclusively to other matters and gave the trial court no chance to correct an egregious misunderstanding of the law. That part of the opinion will be disregarded as unfortunate dictum on appeal just as both parties treated it at the trial level. *See Perkin–Elmer Corp. v. Computervision Corp.,* 732 F.2d 888, 894, 221 USPQ 669, 673 (Fed.Cir.) ("We review judgments ... not passing statements."), *cert. denied,* 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984).

In view of the above sequence of events and the language of the judgment, we see no reason to depart from the sound practice that an issue not raised by an appellant in its opening brief, here the issue of the invalidity of claims 6 and 7, is waived. *See* Fed.R.App.P. 28(a)(2); 9 *Moore's Federal Practice* ¶ 228.02[2.–1] at 28–7 (2d ed. 1990); *accord Brown v. Sielaff,* 474 F.2d 826 (3rd Cir.1973). This practice is, of course, not governed by a rigid rule but may as a matter of discretion not be adhered to where circumstances indicate that it would result in basically unfair procedure. *Moore's,* ¶ 228.02[2.–1] at 28–7 n. 2; *cf. Kaufman Co. v. Lantech Inc.,* 807 F.2d 970, 973 n. *, 1 USPQ2d 1202, 1204 n. * (Fed.Cir.1986). Here, however, we do not find it appropriate to withhold its application.

The decision on what issues to raise appears to have been a knowing tactical decision by BD. To the end of appellate argument, it maintained that validity was not an issue, a position which has the virtue only of consistency. At most, BD made a cursory argument in its reply brief that we

would have to reverse the trial court if the issue were before us. BD points to nothing in the district court's analysis of the obviousness of claims 6 and 7 under 35 U.S.C. § 103 which might rise to the level of plain error. BD struggles to come up with genuine issues of material fact in the district court's claim interpretation by relying on an untimely affidavit and it asserts the commonly heard argument of hindsight reconstruction. But, in essence, BD simply disagrees with the district court's legal conclusion.

The district court based its conclusion that claims 6 and 7 would have been obvious in large part on prior art admittedly withheld by BD during prosecution with respect to its own commercial devices and sales literature. The withholding of this art and affirmative misrepresentations about prior art were the basis for Bard's charge of inequitable conduct which the district court believed it had "no choice but to deny" on summary judgment, despite a finding of high materiality, because of the need to resolve a perceived disputed factual issue as to the patentee's culpable intent. *Becton Dickinson*, 719 F.Supp. at 1239, 12 USPQ2d at 1686. However, from this evidence of prior art not considered by the patent examiner, as well as from the prosecution history, the district court concluded there were teachings and motivation to combine those teachings such as to render the inventions of claims 6 and 7 obvious and it did not consider the evidence relating to secondary factors persuasive.

While we agree with BD that the district court's analysis was not flawless, BD has not shown any plain error of law in the result which might cause us to revisit the issue of obviousness. *Cf. Smith Int'l Inc. v. Hughes Tool Co.*, 759 F.2d 1572, 1576, 225 USPQ 889, 891 (Fed.Cir.1985) ("manifest injustice" may negate application of law of the case). Indeed, no reason, equitable or otherwise, suggests such review is warranted herein. Thus, we agree with Bard that the issues respecting validity of

---

7. We need not, therefore, discuss Bard's alternative theory that Bard could support the judgment on the ground that claims 6 and 7 were invalid even if the court's judgment did not rest

claims 6 and 7, not being raised in BD's appeal, should be held to have been waived.[7]

### Conclusion

For the foregoing reasons, the judgment of the district court dismissing BD's complaint against Bard is

AFFIRMED.

on that ground. *See United States v. American Ry. Express Co.*, 265 U.S. 425, 435, 44 S.Ct. 560, 564, 68 L.Ed. 1087 (1924).