TROPIX, INC., Plaintiff,

v.

LUMIGEN, INC., Defendant.

Civ. A. No. 92–11000–WJS.

United States District Court,
D. Massachusetts.

May 13, 1994.

Thomas C. O'Konski, Steven J. Frank, Michael E. Attaya, Cesari & McKenna, Boston, MA, Steven B. Kelber, Charles L. Gholz, Oblon, Spivak, McClelland, Maier & Neustadt, P.D., Arlington, VA, T. Christopher Donnelly, Donnelly, Conroy & Gelhaar, Boston, MA, for plaintiff.

William F. Lee, Mark G. Matuschak, William F. Lee, Hale & Dorr, Boston, MA, Mark Boland, J. Frank Osha, Sughrue, Mion, Zinn, Macpeak & Seas, Washington, DC, for defendant.

*ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF PATENT NO. 4,931,569*

SKINNER, Senior District Judge.

In this action, the plaintiff seeks damages and injunctive relief for the alleged infringement of its U.S. Patent No. 4,931,569 (the "569" patent). The defendant moves for summary judgment of non-infringement. The plaintiff has offered no evidence of literal infringement; accordingly, partial summary judgment for the defendant on that issue is allowed.

The plaintiff relies, however, on the doctrine of equivalents; i.e., that the defendant's method of producing purified chemiluminescent, water-soluble 1,2-dioxetane derivatives by a process of crystallization is the

functional equivalent of the process of purification by liquid chromatography claimed in the plaintiff's "569" patent.[1] The plaintiff offers the opinion of its expert, Donald B. Wetlaufer, that it is. Defendant counters with the opinion of its expert, Guilford Jones, II, that it is not, and also relies on admissions by the inventor of the "569" patent.

A dispute of material fact will be considered sufficiently genuine to defeat summary judgment under Fed.R.Civ.P. 56 "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In my opinion, a reasonable jury could not find for the plaintiff on the evidence offered in this case, for the reasons stated herein.

The purification process claimed in the "569" patent requires the use of high performance liquid chromatography. The process requires relatively sophisticated equipment, including pumps and electronic detection devices. In basic summary, an alkali-stabilized reaction mixture containing unpurified dioxetanes is introduced into a column packed with material stable under alkali conditions. The dioxetanes and the impurities are absorbed into the packing material. A water-miscible organic solvent for 1,2–dioxetanes (commonly acetone) is then forced through the column in increasing concentrations. Since the dioxetanes and the impurities will be dissolved by the solvent at different rates, the timing and concentration of the solvent flow is adjusted so that when the solvent is drawn off, it consists of a "soup" containing water, acetone and relatively pure dioxetanes. The water and acetone are evaporated out, leaving the purified dioxetanes. The claims also include a number of additional specifics concerning the nature of the chemicals to be employed.

On the other hand, ·the defendant's allegedly infringing process is known as recrystallization. It is a process that has been employed by chemists for one hundred and fifty years. No pump or sophisticated equipment is needed other than a simple glass flask. The process depends on the crystalline structure of the dioxetanes rather than the relative rates of absorption of the dioxetanes and the associated impurities. The unpurified dioxetanes are dissolved in water. Acetone is added in a given concentration, and the mixture is refrigerated for 24 hours. At the end of this period, relatively pure dioxetane crystals will have been precipitated to the bottom of the flask, whence they are recovered and dried.

It is true that the purpose of the two processes is the same: to produce substantially pure chemiluminescent water-soluble 1,2–dioxetane derivatives which have increased sensitivity in detecting the presence of certain harmful viruses in human tissue. Moreover, the result is the same for all practical purposes: a product of over 90% purity.

■ Overall equivalence does not establish infringement, however. "[I]nfringement requires that every *limitation* of a claim be met literally or by a substantial equivalent." *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1389 (Fed.Cir.1992). The burden of proof is on the plaintiff to produce evidence of equivalence. *Id.* The plaintiff must establish not· only substantially the same function and result, but also that the result was achieved in substantially the same way. *Becton Dickinson and Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 797–98 (Fed.Cir.1990); *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934 (Fed.Cir.1987), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988). "[A] court may not, under the guise of applying the doctrine of equivalents, erase a plethora of meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement.... Though the doctrine of equivalents is designed to do equity, and to relieve an inventor from a semantic straitjacket when equity requires, it is not designed to permit wholesale redrafting of a claim to cover non-equivalent devices, i.e., to permit a claim expansion that would encompass more than an insubstantial change." *Perkin–El-*

---

1. At an earlier stage of this case, the parties stipulated that the "569" patent is a "product-by-process" patent, the ramifications of which were explored in my Memorandum of Controlling Law dated May 28, 1993.

**27**

*mer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1532 (Fed.Cir.1987).

The claims of the "569" patent are clearly limited to the employment of high performance liquid chromatography. Recrystallization is fundamentally different in both the chemical reactions which are generated by the process and the technique, which employs none of the sophisticated devices involved in high performance liquid chromatography. Another "important factor is whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with the one that was." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609, 70 S.Ct. 854, 857, 94 L.Ed. 1097 (1950). Dr. Wetlaufer dutifully offered his unsupported opinion that persons reasonably skilled in the art would have known of the interchangeability of the two methods; Dr. Jones gave the contrary opinion. In fact, however, John Voyta, one of the listed inventors of the "569" patent, and an officer of the plaintiff, surely a person reasonably skilled in the art, testified on deposition as follows:

Q. Okay. As a biochemist and based on your experience, you understand that crystallization is a different technique from reversed-phase high-performance liquid chromatography, correct?

A. That's correct.

\* \* \* \* \* \*

Q. ... Did you attempt to use crystallization or recrystallization to purify AMPPD?

A. No.

Q. Okay. Why not?

A. The only things that I had any experience with recrystallizing way back when were solvent molecules which were solvent in organic solvents. This is water soluble material, and I didn't have any basis in trying to recrystallize something out of aqueous solution.

Q. Did you consider recrystallization?

A. No.

The unsupported conclusions of Dr. Wetlaufer on the ultimate issues in the case, although doubtless admissible as expert opinions, are, in my opinion, insufficient to carry the day for the plaintiff in view of the over-whelming evidence to the contrary. In my opinion an impartial fact-finder could not find for the plaintiff on the basis of the evidence in this case. Accordingly, the defendant's motion for partial summary judgment of non-infringement of the "569" patent is allowed.