**KEY MANUFACTURING GROUP, INC., Plaintiff-Appellee,**

**v.**

**MICRODOT, INC., Defendant-Appellant.**

**No. 90-1342.**

United States Court of Appeals, Federal Circuit.

Feb. 13, 1991.

Rehearing Denied March 15, 1991.

Jerold I. Schneider, Spencer & Frank, Washington, D.C., argued, for plaintiff-appellee. With him on the brief was Catherine M. Voorhees.

Kenneth J. Jurek, Mayer, Brown & Platt, Chicago, Ill., argued, for defendant-appellant. With him on the brief was Rosanne J. Faraci.

Before PLAGER and RADER, Circuit Judges, and FRIEDMAN, Senior Circuit Judge.

RADER, Circuit Judge.

The United States District Court for the Eastern District of Michigan adjudged Microdot, Inc. (Microdot) liable for infringement of reexamined United States Patent No. B1-4,123,961 ('961 patent) owned by Key Manufacturing Group, Inc. (Key). The district court held that Microdot's capped wheel nuts infringe the '961 patent claims literally and under the doctrine of equivalents. *Key Mfg. Group, Inc. v. Microdot, Inc.*, 15 USPQ2d 1195 (E.D.Mich. 1990). This court reverses.

## BACKGROUND

Both Key and Microdot manufacture capped wheel nuts used to attach a wheel to a car axle. The wheel nuts have several sides or "wrench flats" to permit a tool to grasp the nut for tightening or loosening. The nut body has two faces. The nut face in direct contact with the wheel is the "wheel face." The opposite or exterior face is the "cap face."

The '961 patent discloses and claims a decorative nut and stainless steel cap for attachment to the nut body. The stainless steel cap has sides corresponding to the wrench flats. Welds secure the decorative cap to the cap face of the nut body. Claim 1 of the '961 patent reads as follows:

> 1. A decorative nut for holding a wheel on a motor vehicle and exposed to view on the wheel, said nut having a central threaded aperture, polygonal sides, a first end adapted to engage a wheel, a second end opposite said first end and having an end face extending at right angles to the axis of the nut, and a sheet metal cap for the nut and having a section extending over the polygonal sides of the nut and an end section adapted to cover the second end of the nut, said section extending over the polygonal nut sides including a plurality of cap wrench flats respectively associated with and oppositely facing said polygonal nut sides, said cap wrench flats and said polygonal nut sides being disposed between said first and second ends of said nut, said end section being connected to the section of the cap which covers the polygonal nut sides by a section formed fully around the perimeter of the cap *and having an extension at right angles to the axis of the nut so as to be parallel to said end face, such connecting section being in juxtaposed contact throughout a substantial area with and welded to said end face*, the position of welded contact between the connecting section and the end face resulting in shear forces being applied to the weld in response to the application of forces on the capped wrench flats which create moments about the central axis of the nut.

(Emphasis added.) The highlighted portion constitutes the disputed "at right angles" and "substantial area" claim language. The invention is illustrated in the '961 patent in part as follows:

Fig-1
2
10
30
12
2
Fig-2
34
30
32
18
10
34
26
16
22
12
28
24
20
14

64
74
72
76
5
10
5
84
78
70
82
68
66
62
80

Fig-4

Microdot's nut is similar in many respects to the '961 disclosed nut. It differs, however, in significant particulars. The '961 claims require "an extension" of the decorative cap "at right angles to the axis of the nut so as to be parallel to said end face." The cap face of Microdot's nut body and the cap itself have a fifteen degree outward taper. Key does not dispute this fact. Key asserts, however, that no technologically significant difference exists between Microdot's fifteen degree taper and Key's zero degree interface.

Another difference is the area of contact between the decorative cap and the nut. The '961 claims require "contact throughout a substantial area." Microdot argues that its cap is not in contact with the nut over a substantial area.

In 1987, Key sued Microdot for infringement of the '961 patent. After a bench trial, the district court upheld the validity of the '961 patent. The district court also concluded that the reexamined claims, as amended, and the original claims were identical within the meaning of 35 U.S.C. §§ 252, 307(b) (1982). Finally, the district court concluded that Microdot's nuts literally infringed the '961 claims. *Key Mfg. Group, Inc. v. Microdot, Inc.*, 679 F.Supp. 648, 4 USPQ2d 1687 (E.D.Mich.1987). The district court found literal infringement despite its conclusion that "[t]he Microdot capped wheel nuts differ[ ] from those of Key." *Id.* at 660, 4 USPQ2d at 1697.

On appeal from that judgment, this court affirmed the validity holding, but vacated the infringement judgment. The district court had ignored some claim limitations. This court stated that "[a]ll claim limitations are significant and must be considered" in an infringement analysis. Under the doctrine of equivalents as well, "claim limitations cannot be ignored, and 'the plaintiff must show the presence of every element or its substantial equivalent in the accused device.' " *Key Mfg. Group, Inc. v. Microdot, Inc.*, 854 F.2d 1328 (Fed. Cir.1988) (table) (opinion available on Westlaw) (citing *Lemelson v. United States*, 752 F.2d 1538, 1551, 224 USPQ 526, 533 (Fed. Cir.1985)). This court remanded for the district court to "provide sufficient factual findings on infringement to enable a meaningful review of the merits of its judgment." *Id.*

On remand, the district court addressed the claim limitations of "substantial area" and "at right angles to the axis of the nut". *Key Mfg. Group, Inc. v. Microdot, Inc.*, 15 USPQ2d 1195 (E.D.Mich.1990). The district court determined that the "substantial area" limitation is met by a weld "sufficient to hold the cap and nut together in response to shear forces applied during the loosening or tightening of the wheel nut." *Id.* at 1199. The "right angles" limitation is met if "at least a portion of the weld" is at right angles to the axis of the nut. *Id.* at 1200.

The trial court thus concluded that Microdot's wheel caps infringed the '961 claims literally and under the doctrine of equivalents. With respect to "substantial area," the trial court opined that Microdot's wheel caps use welds with enough strength to resist shearing. *Id.* at 1201. Further, the district court found that at least a portion of the weld was at right angles to the axis of the nut. Thus, according to the trial court, Microdot literally infringed the '961 claims. *Id.* at 1202.

The district court concluded that the Microdot nuts also infringe under the doctrine of equivalents. The court opined that the "substantial area" language describes the function of holding the nut and cap together. Thus, the trial court decided that any contact area is equivalent "as long as the weld is placed in shear during the application of wrenching forces and retains the cap and nut together, as the patent teaches." *Id.* at 1203. The district court determined that Key added the "at right angles" language during prosecution merely to "clarify the location of the weld on the nut body and in contrast to the wrench flats," rather than to distinguish prior art. *Id.* Thus, even though Microdot's nut included

a taper, the district court granted Key "a range of equivalents which includes a fifteen degree taper...." *Id.* at 1204.

DISCUSSION

*Claim Interpretation*

The district court erred in interpreting claim 1. Before analyzing a claim to determine whether infringement occurs, the court must properly interpret the claim. Improper claim construction can distort the entire infringement analysis. *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 450, 230 USPQ 416, 421 (Fed.Cir.1986), *cert. denied*, 484 U.S. 823, 108 S.Ct. 85, 98 L.Ed.2d 47 (1987). Claim interpretation is a question of law. *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1270, 229 USPQ 805, 811 (Fed. Cir.1986), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 875, 93 L.Ed.2d 829 (1987). While a factual dispute over the meaning of terms in a claim may arise, in this case there is no assertion that the words on which the issue of infringement turns have anything other than their common, ordinary meaning. *See Howes v. Medical Components, Inc.*, 814 F.2d 638, 643, 2 USPQ2d 1271, 1273 (Fed. Cir.1987). Thus, in the absence of a factual issue, proper interpretation of claim 1 is a question of law freely reviewable by this court on appeal. *See Durango Assocs. Inc. v. Reflange Inc.*, 843 F.2d 1349, 1356, 6 USPQ2d 1290, 1295 (Fed.Cir.1988).

The district court's interpretation of claim 1 conflicts with the claim's straightforward language as supported by the specification and file history. Further, its construction of claim 1 erased all the limitations which distinguished the '961 structure from the prior art. Claim 1 expressly requires the decorative cap to come into contact with the cap face of the nut body at right angles to the nut's axis. The district court found that Microdot's nut has a 15-degree taper on both the cap face and the cap itself. The district court cannot disregard this difference between Microdot's nut and the '961 claims.

Key suggests that it added the right angle limitation during prosecution to distinguish the cap end face from the wrench flats. To the contrary, the prosecution history shows that Key added the limitation to distinguish the structure of the '961 patent from the prior art. The added limitation also describes the flat, unyielding, projection-free, face-to-face contact which defines the substantial area limitation.

The district court erred in concluding that the prior art patents "illustrate a cap end of the nut body at right angles to the axis of the nut." This prior art does not disclose a right angle configuration of both the cap section and cap face. Rather, it shows a tapered cap face and cap section. The "right angles" language distinguished the shape of Key's nut body and cap from prior art. Key argued during prosecution that the language added "significant structural distinctions over the references to more clearly define over the prior art of record."

The district court concluded that "at right angles" means a weld partly at right angles. In reaching this conclusion, the trial court misread the patent claims. The claims refer to the structure of the cap and the cap face—not the weld. Thus, the "right angles" limitation refers to the relationship between these parts and the nut body. The cap section and the cap face must be "at right angles" to the axis of the nut body. The weld joins the cap face and cap section, but the claim specifies no angular relationship applicable to the weld.

The trial court further erred in reading the "substantial area" limitation. According to the district court, any weld strong enough to keep the cap and nut body together under shear forces satisfies the limitation. The "right angles" and "substantial area" limitations define the structure of the nut body and cap. They further define the position, relationship, and amount of direct contact between the cap and the nut. These limitations do not, however, refer to the location and strength of the weld on the cap end face.

*Infringement*

Claim 1 of the '961 patent requires alignment of both the cap face of the nut and the cap itself "at right angles

to the axis of the nut." This language limits the claim. To support an infringement determination, an accused device must embody exactly each claim limitation or its equivalent. *Julien v. Zeringue*, 864 F.2d 1569, 1571, 9 USPQ2d 1552, 1553 (Fed. Cir.1989). Microdot's nut features a fifteen degree taper on the cap face of the nut body and on the cap. This difference precludes literal infringement. Because Microdot's cap is not at right angles to the axis of the nut, it does not literally infringe claim 1.

Claim 1 also requires the nut body's cap face and the cap end section to be in contact over a substantial area. Microdot connects the cap to the nut body with a continuous thin ring projection or a series of welding point projections. These points partially collapse upon welding and essentially keep the parts separated. Only these welding points connect the Microdot nut body and cap. Contact at discrete points is hardly contact over a substantial area. The district court's finding that the "substantial area" limitation is met by any weld capable of resisting shear forces is clearly erroneous. For this reason as well, Microdot does not literally infringe the '961 claims.

Key added the "right angles" and "substantial area" limitations to the '961 claims to overcome prior art rejections. This court may not ignore these limitations in determining whether the accused Microdot nuts infringe. Microdot's fifteen degree taper and lack of direct contact between the nut body and cap end section over a substantial area differ from the '961 claims. These differences preclude a finding of literal infringement.

The Microdot structure also does not infringe under the doctrine of equivalents. Rather Microdot's structure is described in the prior art, specifically in the Chaivre, Allmanna, and Erdmann patents. *See Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934 n. 1, 4 USPQ2d, 1737, 1739 n. 1 (Fed.Cir.1987), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988).

While not obligatory in every doctrine of equivalents determination, the hypothetical claim rationale of *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 14 USPQ2d 1942 (Fed.Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990) helps define the limits imposed by prior art on the range of equivalents. The *Wilson* hypothetical claim analysis does not envision application of a full-blown patentability analysis to a hypothetical claim. *Wilson* simply acknowledges that prior art limits the coverage available under the doctrine of equivalents. A range of equivalents may not embrace inventions already disclosed by prior art.

A hypothetical claim drawn to cover literally the Microdot nut would not be patentable over the prior art. The Chaivre, Allmanna, and Erdmann patents would make the Microdot nut obvious. Contrary to Key's assertion, no single prior art reference need include each element of the hypothetical claim. The question under *Wilson* is whether the hypothetical claim "could have been allowed by the PTO over the prior art." *Id.* at 684, 14 USPQ2d at 1948. Because the Microdot nuts and, thus the hypothetical claim, are obvious in light of these three prior art references, the doctrine of equivalents does not reach the accused nuts.

To support its infringement finding, the trial court erroneously relied on the interchangeability of Microdot's and Key's nuts. While neither party disputes the interchangeability of Microdot's and Key's nuts, an interchangeable device is not necessarily an equivalent device.

Key failed to meet the burden of showing the accused Microdot nuts contain a substantial equivalent of every element or limitation of the '961 claims.

## CONCLUSION

Microdot's capped wheel nuts did not infringe the '961 patent claims. Therefore, the judgment of the district court is

REVERSED.