Mark H. KARTARIK and Thomas W. Newcome III, Plaintiffs,

v.

REMOTE TRANSACTION TECHNOLOGIES and Budget Rent–A–Car Corp., Defendants.

Civ. No. 4–91–961.

United States District Court, D. Minnesota, Fourth Division.

Jan. 28, 1993.

Daniel W. McDonald, Douglas J. Williams, Peter J. Gafner, Merchant Gould Smith Edell Welter & Schmidt, Minneapolis, MN, for Mark H. Kartarik, Thomas W. Newcome, III.

Terence Melling Fruth, Norman J. Baer, Vincent D. Louwagie, Fruth & Anthony, Minneapolis, MN, Danny L. Williams, Arnold White & Durkee, Houston, TX, for Remote Transaction Technologies, Budget Rent-A-Car Corp.

## ORDER

DOTY, District Judge.

This matter is before the court on defendants' motions for summary judgment and attorneys' fees. Based on a review of the file, record and proceedings herein, the court grants defendants' motion for summary judgment and denies defendants' motion for attorneys' fees.

## BACKGROUND

Plaintiffs Mark H. Kartarik and Thomas W. Newcome III brought the present ac-

tion alleging that the Remote Transaction System Model RTB–1 ("the RTT system") produced by defendant Remote Transaction Technologies ("RTT") and used by defendant Budget Rent–A–Car Corporation ("Budget") infringes on plaintiffs' patent, U.S. Patent No. 4,631,358 ("the Newcome patent").

The Newcome patent describes and claims a machine that operates essentially as a vending machine, storing articles, such as keys, and dispensing them on entry of a special code by a predetermined user. The RTT system is also capable of dispensing keys. Plaintiffs contend that the RTT system infringes one or more of claims of the Newcome patent.[1]

Defendants argue that they are entitled to summary judgment because the Newcome patent claims are unambiguous and the RTT system does not contain every means or limitation required by those claims. Defendants argue that the RTT system is distinguishable from the Newcome patent claims in two primary aspects: (1) the RTT system does not have, or need to have, the access control mechanisms required by the Newcome patent claims, and (2) the RTT system does not have the same storage and release structure, specifically a reciprocating article release means, that is described and claimed in the Newcome patent specification.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which requires the trial judge to direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct.

2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53.

1. *Defendants' Motion For Summary Judgment*

■ The court may grant summary judgment in patent claims relying on the same standard used for other types of claims:

> the statutory purposes of the grant of summary judgment under Fed.R.Civ.P. 56 are without question intended to be effectuated in patent litigation as in any other type of suit and in accordance with the same standard.

*Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1571 (Fed.Cir.1984) (footnote omitted); *see also Avia Group Int'l v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1561 (Fed.Cir.1988) ("the issues in a patent case are subject to summary

---

**1.** Plaintiffs specifically allege infringement of claims 1, 2, 7, 8, 9, 10, 12 and 13 of their patent.

judgment"). The patentee has the burden of proving infringement. *See, e.g., SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 889 (Fed.Cir. 1988) (citation omitted). To survive a motion for summary judgment, the patentee must submit enough evidence to raise a triable issue of·material fact concerning every element of the asserted claim. If the patentee fails to present sufficient evidence of infringement concerning even a single element of the asserted claim, all other facts become immaterial and there is no genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552; *see also Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796–98 (Fed.Cir. 1990). With this standard at hand, the court will consider defendants' motion for summary judgment.

For the patentee to prevail on the question of infringement, it must show that the properly interpreted claims of its patent describe the accused device. *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934–35 (Fed.Cir.1987) (en banc), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988). The determination of infringement requires that (1) the court interpret the patent claims, and (2) compare the accused device to those claims. *Becton Dickinson*, 922 F.2d at 796 (quoting *Caterpillar Tractor Co., v. Berco*, 714 F.2d 1110, 1114 (Fed.Cir.1983)). The court will address each element in turn.

> When the court interprets a patent claim: A claim is construed in light of the claim language, the other claims, the prior art, the prosecution history, and the specification, *not* in light of the accused device.

*SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1118 (Fed.Cir.1985) (emphasis in original); *accord Key Mfg. Group, Inc. v. Microdot, Inc.*, 925 F.2d 1444, 1448 (Fed. Cir.1991). The Newcome patent claims also describe the means for performing various steps or functions.[2] In general, interpretation of a means element involves consideration of the same factors used to construe elements and limitations using non-means· language. *Medtronic, Inc. v. Intermedics, Inc.*, 799 F.2d 734, 742 (Fed. Cir.1986), *cert. denied*, 479 U.S. 1033, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987). Courts, however, will not construe a means element to cover all possible means for performing a step or function. *Jonsson v. Stanley Works*, 903 F.2d 812, 819 (Fed.Cir. 1990). In determining what is covered by a means element, the court also examines the disclosed structure in the patent specification that performs the step or function in question. The means element will be construed to cover the specific structure disclosed in the specification and any equivalents of that structure. 35 U.S.C. § 112 para. 6; *Pennwalt Corp.*, 833 F.2d at 934. The court will apply those rules to interpret the Newcome patent claims.

Because it operates with minimal or no supervision, the Newcome machine has access control mechanisms described in the patent application and included in the patent claims, including:

> 1. Use of a "changeable predetermined code", *see* Newcome patent, claim 1; *see also id.* claim 8, subpara. b; *id.* claim 9, subparas. c & d.
>
> 2. "A logic unit having changeable code setting means for a proprietor to enter a predetermined code", *see id.* claim 1, subpara. c;
>
> 3. "A code input means ... for input of the predetermined code by a user", *see id.;* and
>
> 4. "Signal output means and communication with" the "article release means." *Id.*

Examining the Newcome patent, the court first concludes that the relevant means language is unambiguous. The Newcome machine must have a mechanism, a "code setting means," for storing a predetermined code that has been input by the proprietor. The "code input means" provides a mecha-

---

**2.** That type of claiming is authorized under 35 U.S.C. § 112 para. 6, which provides that:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

nism by which the user can input the predetermined code into the machine. The "logic unit" then compares the code input by the user to the code previously stored by the proprietor in the "code setting means". If the two codes match, the "signal output means" automatically triggers the "article release means" and the stored article is released to the user. *See* Newcome patent, Col. 6, lines 7–18.

Turning to the patent specifications to further construe the means elements, the court finds that the "changeable code setting means" in the specification is programmed by mechanical programming switches or pins, or with a microprocessor. *See* Newcome patent, Col. 3, lines 19–33; Fig. 2. The "code input means" in the specification is a digital input pad with numeric keys. *See id.*, Col. 2, line 65—Col. 3, line 2; Fig. 1. The "changeable predetermined code" is an access code. That predetermined code, however, is distinguishable from such things as credit card numbers, which the Newcome patent refers to as "user identifying codes." *Id.*, Col. 5, line 63—Col. 6, line 3. Thus, the patent states that "a charge card number or another user identifying code previously provided", may be entered to identify a potential user, ultimately resulting in that user receiving the "predetermined code" for input to the system. *See id.* It is that "predetermined code" not any user identification code, that is compared to the previously stored code. As construed in light of the patent specifications, the court concludes that the special control mechanisms set out in the Newcome patent claims are unambiguous.

◼ In the second step of its determination of whether there is infringement, the court is to compare the accused device to the properly interpreted claims. For a patent holder to prove infringement, the accused device must contain every limitation, literally or equivalently, of the claim. If one claim limitation is missing, there is no infringement as a matter of law. *See, e.g., London v. Carson Pirie Scott & Co.,* 946 F.2d 1534, 1539 (Fed.Cir.1991) (citation

omitted). Literal infringement occurs only if every element and limitation of a claim is found exactly in the accused device. *See, e.g., Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.,* 757 F.2d 255, 257 (Fed.Cir.1985). In the present case, however, plaintiffs do not allege literal infringement.

◼ Even if there is no literal infringement because a minor deviation from the claim, there may still be infringement under the doctrine of equivalents. Courts apply the doctrine in cases where an infringer, instead of inventing around a patent, merely makes a small change, essentially "stealing" the invention by appropriating "the essence of an invention while barely avoiding the literal language of the claims." *London,* 946 F.2d at 1538 (citation omitted).

◼ Under the doctrine of equivalents, the patent holder has the burden of showing that the accused machine or process has elements, steps or limitations that "performed[ ] substantially the same function in substantially the same way to obtain the same result." *Graver Tank & Mfg. Co. v. Linde Air Prods.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950) (quotation omitted). All three elements are required and every claim limitation must be met. *Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1389 (Fed.Cir.1992) (citing cases). That standard will be applied to determine whether the claims set forth in the Newcome patent describe the RTT system.

The Newcome patent asserts three independent claims, claims 1, 8 and 9.[3] The court will address each claim in turn.

Claim 1 of the Newcome patent describes:

An automatically resetting and tamper resistant device for releasably storing an article from an internal secured location and for dispensing the article to an external location accessible to a user having been provided with a changeable predetermined code....

---

**3.** The balance of the claims set forth in the Newcome patent are dependent.

Subparagraph c of claim 1 further describes:

> a logic unit having changeable code setting means for a proprietor to enter a predetermined code, a code input means located at an externally accessible location for input of the predetermined code by a user and signal output means in communication with said article release means....

In the RTT system, however, the release of keys to a user is controlled solely by a control point operator, apart from any action by the user, and the operator does not release a key until the transaction is otherwise completed. The proprietor of the RTT system does not store a predetermined code, and the RTT system does not have any mechanism for comparing a stored code with a code input by the user and, upon a match, automatically triggering the release of a key. The RTT system thus does not operate on the basis of a "changeable predetermined code", and the system has no need for a "changeable code setting means" or a "code input means". Plaintiffs also acknowledge that while the Newcome patent calls for an electronic comparator and signal generator, the RTT system:

> Provides for the Budget employee to provide a signal output to activate the article release means.

(Pls.' Mem.Opp.Summ.J.Mot. at 3.) As a result of this method of operation, which is fundamentally different from that set forth in Claim 1, the RTT system has no need for the access control mechanism required by claim 1.

Comparing the RTT system to claim 1, the court concludes that the access means provided under the RTT system does not perform in substantially the same way as the access mechanism described in claim 1. A human being is not deemed the equivalent of a machine, particularly in cases such as the present case, where there is no support for the use of a human being in the specification. *See In re Bernhart & Fet-*

ter, 417 F.2d 1395, 57 CCPA 737, 163 U.S.P.Q. (BNA) 611, 615 (1969). Moreover, plaintiffs fail to proffer any evidence to support a finding of equivalence under 35 U.S.C. § 112 para. 6 concerning the "changeable code setting means," "code input means," or "signal output means." (Pls.' Mem.Opp.Summ.J.Mot. at 15–21.) [4] Because the access control mechanism set forth in claim 1 does not exist, literally or equivalently, in the RTT system, the court concludes that the RTT system does not infringe on claim 1 of the Newcome patent as a matter of law. See *Intellicall*, 952 F.2d at 1389 (summary judgment should be granted where patent holder "produced no evidence to establish that the limitations of [a] claim ... which were not met literally were met equivalently").

Claim 8 of the Newcome patent is very similar to claim 1. One element differs slightly, as set forth in claim 8, subparagraph b:

> a changeable code receiving means, signal emitting means located inside said tamper resistant storage means, an externally accessible code input means, and code comparison means and a power source located inside said tamper resistant storage means....

Thus, claim 1 calls for a "logic unit" having various means, whereas claim 8 calls for a "code comparison means" that functions to compare the predetermined code set by the proprietor with the code input by the user. As previously determined, the RTT system does not use a "changeable code setting means", a "code input means" or a "code comparison means" as those terms as construed in light of the Newcome patent claims and specifications. The RTT system does not compare any code input by a user to a previously stored code, and release keys in response to a match, and thus has no mechanism, including a "signal emitting means", for comparing such codes. Plaintiffs also fail to proffer any evidence to support a finding that the RTT system has an equivalent to the "signal emitting means". The court thus concludes that

---

**4.** Although plaintiffs seek to argue infringement under the doctrine of equivalents, they offer no evidence to support such findings. *See, e.g., id.* at 21–22. Plaintiffs instead rely on arguments of counsel in an attempt to meet their burden of showing a prima facie case of infringement.

RTT system has neither the code comparison means set forth in claim 8 nor another means that functions in a substantially similar way. Because nothing in the RTT system corresponds, literally or equivalently, to that code comparison element, the court concludes that the RTT system does not infringe on claim 8 as a matter of law.

■■■ Claim 9 of the Newcome patent is another independent claim, but it is directed to a "method":

> A method for storing and protecting an article for access to a predetermined user
> . . .

The first step required in claim 9 is that of "providing" the apparatus that is set forth in claim 1. As previously determined, however, claim 1 does not describe the RTT system, and thus, no method performed by defendants involves providing a claim 1 system. The court therefore concludes that the RTT system does not infringe on claim 9 for the same reasons set forth concerning claim 1.

Claim 9 also requires:

> c. Storing a predetermined code into the changeable code setting means by the proprietor of said device,
> d. Providing a user with the predetermined code for input into the externally located code input means to release an article from the storage device to the externally located access means for subsequent use by the user, and
> e. Activating of said tamper resistant article release means by the user by input of the predetermined code for releasing the article to the externally located access means from said tamper resistant device.

In the RTT system, the proprietor does not store a predetermined code into a "changeable code setting means." In addition, the RTT system does not provide the user with a predetermined code and the user does not enter a predetermined code, thereby activating "said tamper resistant article release means." The court further concludes that nothing in the RTT system corresponds equivalently to those elements. The court thus determines that the RTT

system does not infringe on claim 9 of the Newcome patent.

Based on its determination that none of the independent claims of the Newcome patent are infringed by the RTT system or its use, the court concludes that none of the dependent claims are infringed because those claims include all the elements and limitations of the independent claims on which they depend. *Wahpeton Canvas Co. v. Frontier, Inc.,* 870 F.2d 1546, 1552 n. 9 (Fed.Cir.1989) ("One who does not infringe on an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim." (citation omitted)).

In summary, the court concludes that the RTT system does not infringe on any of the asserted claims, either literally or under the doctrine of equivalents, and thus grants defendants' motion for summary judgment.

Defendants also argue that the RTT system does not have the claimed storage and dispensing mechanism set forth in the Newcome patent. Based on the court's determination that the RTT system does not have the control mechanisms required by the Newcome patent claims, the court does not address defendants' arguments concerning the storage and dispensing mechanism set forth in the Newcome patent.

**2.** *Defendants' Motion for Attorneys' Fees*

■■■ Defendants also move for attorneys' fees pursuant to 35 U.S.C. § 285, which provides that:

> The court in exceptional cases may award reasonable attorney's fees to the prevailing party.

The standard requires that:

> 1. The court exercise its discretion;
> 2. The court declare the case exceptional;
> 3. The fees awarded be "reasonable"; and
> 4. The party receiving the fees be the prevailing party.

*See Machinery Corp. v. Gullfiber AB,* 774 F.2d 467, 470 (Fed.Cir.1985) (citation omit-

ted). An exceptional case must be established by clear and convincing evidence, and a party must provide evidence which convinces the trial court that a "finding of unfairness, bad faith, or inequitable conduct on the part of the unsuccessful patentee" is proper. *Advance Transformer Co. v. Levinson,* 837 F.2d 1081, 1085 (Fed.Cir. 1988) (quoting *Stevenson v. Sears, Roebuck & Co.,* 713 F.2d 705, 713 (Fed.Cir. 1983)). Thus:

> a successful defendant in a patent infringement suit seeking to recover fees must demonstrate that there is evidence of actual wrongful intent or of gross negligence on the part of the plaintiff in bringing the action.

*Multi–Tech, Inc. v. Components, Inc.,* 708 F.Supp. 615, 620 (D.Del.1989) (citing *Machinery Corp.,* 774 F.2d at 473).

Applying that standard, the court determines that defendants fail to demonstrate that the present case is exceptional. The court finds that plaintiffs were not grossly negligent or acting in bad faith when asserting the present action. The court thus declines to award defendants attorneys' fees and denies that motion.

Accordingly, IT IS HEREBY ORDERED that defendants' motion for summary judgment is granted; and defendants' motion for attorneys' fees is denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.