**DF & R CORPORATION, Plaintiff,**

v.

**AMERICAN INTERNATIONAL PACIFIC INDUSTRIES CORPORATION,
Defendant.**

Civ. No. 4–92–1238.

United States District Court,
D. Minnesota,
Fourth Division.

Aug. 13, 1993.

James Patterson and Patterson & Keough, P.A., and John Mason and Dorsey and Whitney, Minneapolis, MN, for plaintiff.

Richard A. Arrett, Walter J. Steinkraus, Oliver F. Arrett, Scott Q. Vidas, Leoniede M. Brennan, and Vidas, Arrett & Steinkraus, P.A., and Edward A. Sokolski, Torrance, CA, for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on the parties' cross-motions for partial summary judgment. Based on a review of the file, record and proceedings herein, the court grants in part and denies in part the parties' motions.

## BACKGROUND

This matter involves the alleged infringement of two patents, U.S. Patent No. RE 34,120 [1] ("'120 patent") and U.S. Patent No. 4,836,482 ("'482 patent"), that plaintiff DF & R Corporation ("DF & R") owns. Both patents describe radar detector mounting devices that attach to the windshield of an automobile. The '120 patent, entitled "Article Holding Bracket," describes:

> A windshield mounted bracket to removably and adjustably hold a radar detector including suction cups for removable windshield attachment, an adjustable strap

---

1. The '120 patent initially issued on May 21, 1991, as U.S. Patent No. 5.016,850 and was reissued as the '120 patent on November 3, 1992.

bracket having flanged bottoms to fit into corresponding grooves in side walls of the detector housing and a rotatably adjustable connecting ball hinge.

Viksnins Aff., Exh. A (Abstract). The '482 patent, entitled "Hinged Support Bracket For A Radar Detector Or Like Device", describes:

A hinged support bracket for a radar detector [that] includes a support portion and a mounting portion fixed together by an adjustable hinge. The support portion is generally "T" shaped and contains suction cups at its extremities to hold the bracket to the windshield of a vehicle. The mounting portion includes a planar base and sides extending perpendicularly. The sides contain rails which engage corresponding grooves on a radar detector or an adapter. The hinge is adjusted and fixed in a position whereby, with the support portion attached to the windshield, the mounting portion is essentially horizontal.

*Id.* Aff., Exh. B (Abstract).

Defendant American International Pacific Industries Corporation ("AIP") also manufactures a radar detector mount, the RM–401CL, that attaches to automobile windshields.[2] The RM–401CL is similar in structure to the invention described in the '120 patent.

On December 14, 1992, DF & R commenced this action against AIP, asserting claims for willful infringement of both its '120 patent ("Count I") and its '482 patent ("Count II"). AIP answered the complaint and asserts the following counterclaims:[3]

1. A declaratory judgment that the RM–401CL does not infringe the '120 patent or the '482 patent;

2. DF & R's actions in pursuing this litigation constitute unfair competition in violation of 15 U.S.C. § 1125;

3. A declaratory judgment that the '120 patent and the '482 patent are invalid; and

4. Entitlement to equitable intervening rights under 35 U.S.C. § 252 to continue the manufacture and sale of the RM–401CL.

DF & R now moves for partial summary judgment. DF & R contends that it is entitled to summary judgment on Count I because AIP has admitted that the RM–401CL includes all of the elements recited in claims 3–10 and 12 of the '120 patent and because AIP fails to raise a material issue of fact concerning the alleged infringement of claim 11 of the '120 patent. In its motion for summary judgment DF & R states that it is entitled to summary judgment on Count II because AIP fails to raise a material issue of fact concerning the alleged infringement of the '482 patent. However, during oral arguments, DF & R asserted that the court should deny both parties' motions for summary judgment with respect to the '482 patent because there exist material issues of fact concerning the alleged infringement of that invention.

In response, AIP moves for summary judgment on Counts I and II and on its first and fourth amended counterclaims. AIP contends that it is entitled to summary judgment on Count I because it has intervening rights pursuant 35 U.S.C. § 252. AIP contends that it is entitled to summary judgment on Count II because the RM–401CL does not contain all of the elements of '482 patent's independent claims, claims 1 and 10. AIP also contends that those same arguments support an order granting summary judgment in its favor on its first and fourth amended counterclaims. Finally, AIP seeks a declaration that its proposed alternative design for a radar detector mount does not infringe the '120 patent or the '482 patent.

## DISCUSSION

The court applies the same summary judgment standard to motions involving patent

---

2. AIP contends that it only manufactured the RM–401CL through October 1992 and has approximately 20,000 units in its inventory.

3. AIP also asserted a number of affirmative defenses. *See* Clerk of Court's File, Docket No. 24. The parties have not raised those defenses in their motions.

claims as it does to motions involving other types of claims. *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1561 (Fed.Cir.1988) ("It is no longer debatable that the issues in a patent case are subject to summary judgment"); *Union Carbide Corp. v. American Can Co.,* 724 F.2d 1567, 1571 (Fed.Cir.1984) ("[T]he statutory purposes of the grant of summary judgment under Fed.R.Civ.P. 56 are without question intended to be effectuated in patent litigation as in any other type of suit and in accordance with the same standard") (footnote omitted).

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a party cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53. With this standard at hand, the court will consider the parties' cross-motions for summary judgment.

### 1. The '120 Patent

DF & R contends that the RM–401CL literally infringes its '120 patent.[4] For DF&R to prevail on the question of infringement, it must show that the properly interpreted claims of its patent describe the accused device. *Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 934–35 (Fed. Cir.) (en banc), *cert. denied,* 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988). A literal infringement analysis entails two steps. First, the court interprets the patent's claims. *Becton Dickinson & Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 796 (Fed.Cir.1990) (citation omitted).

When the court interprets a patent claim: A claim is construed in light of the claim language, the other claims, the prior art, the prosecution history, and the specification, *not* in light of the accused device.

*SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1118 (Fed.Cir.1985) (emphasis in original); *accord Key Mfg. Group, Inc. v. Microdot, Inc.,* 925 F.2d 1444, 1448 (Fed.Cir.1991). Second, the court compares the accused device to the interpreted claims. *Becton,* 922 F.2d at 796 (citation omitted). Literal in-

---

4. DF & R, the patentee, has the burden of proving infringement. *See, e.g., SmithKline Diagnostics, Inc. v. Helena Lab Corp.,* 859 F.2d 878, 889 (Fed.Cir.1988) (citation omitted); *Uniroyal, Inc. v. Rudkin–Wiley Corp.,* 837 F.2d 1044, 1054 (Fed. Cir.), *cert. denied,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). DF & R can establish in-

fringement of the '120 patent under either of two theories, literal infringement or infringement under the doctrine of equivalents. DF & R only asserts literal infringe. Therefore, the court does not analyze whether the RM–401CL infringes the '120 patent under the doctrine of equivalents.

fringement requires that every limitation of a patent claim must be found in the alleged infringing product. *Uniroyal, Inc.*, 837 F.2d at 1054 (citation omitted). If one claim limitation is missing, there is no infringement as a matter of law. *See e.g., London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed. Cir.1991) (citation omitted).

■ AIP admits that the RM–401CL infringes claims 3–10 and 12 of the '120 patent. *See* Viksnins Aff., Exh. C. (AIP's Supplemental Response to DF & R's First Set of Interrogatories, Interrogatory 14). The court thus concludes that claims 3–10 and 12 of the '120 patent are infringed.

DF & R contends that the RM–401CL also infringes claim 11 of the '120 patent. Examining the record, the court determines that the parties have provided insufficient evidence for it to rule on that assertion. The court thus denies that portion of DF & R's motion concerning claim 11 of the '120 patent.

AIP argues that it has intervening rights pursuant to 35 U.S.C. § 252. Section 252, entitled "Effect of reissue," provides, in part, that:

> No reissued patent shall abridge or affect the right of any person ... who made ... prior to the grant of a reissue anything patented by the reissued patent ... to sell to others to be used or sold, the specific thing so made ... unless the making, using or selling of such thing infringes a valid claim of the reissued patent which was in the original patent.

35 U.S.C. § 252. AIP contends that it produced all of the RM–401CL's prior to the issue date of the '120 patent. AIP thus contends that the RM–401CL does not infringe the '120 patent and asks the court to exercise its equitable powers and allow it to continue to manufacture and sell the RM–401CL.

■ Intervening rights pursuant to § 252 constitute a defense to infringement, not a waiver of infringement. *See Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 (Fed.Cir.) ("Intervening rights ... is 'an affirmative defense ...' ".), *cert. denied*, 477 U.S. 905, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986); *see also Seattle Box Co., Inc. v. Industrial Crating & Packing, Inc.*, 756 F.2d 1574, 1579 (Fed.Cir.1985) ("[O]ne may be able to continue to infringe a reissue patent if the court decides that equity dictates such a result."). Examining the record, the court determines that it is unable to determine whether it should accord AIP intervening rights because there is insufficient evidence concerning the dates it produced the RM–401CL devices. Accordingly, the court denies AIP's motion for summary judgment on its fourth amended counterclaim and on that portion of its first amended counterclaim asserting that the RM–401CL does not infringe the '120 patent. AIP, however, can sell the remaining RM–401CL devices in its inventory. Should AIP fail on its defense, DF & R will be able to calculate damages resulting from the sale of the remaining devices.

## 2. The '482 Patent

### A. Evidentiary Dispute

■ Before addressing the merits of the parties' cross-motions for summary judgment on the alleged infringement of the '482 patent, the court resolves a dispute concerning DF & R's use of Arthur Erdman as its expert witness. AIP contends that Erdman's affidavit is not admissible because he has a conflict of interest with this action and is biased. Specifically, AIP contends that Erdman referred it to its own expert, Wayne Duescher, and, therefore, Erdman's review of Duescher's affidavit constitutes a conflict of interest. In addition, AIP contends that the DF & R's counsel, James Patterson, is also Erdman's patent attorney. AIP thus contends that a conflict arises because Erdman is not an independent third party. AIP thus requests that the court delete Erdman's affidavit from the record. In the alternative, AIP argues that pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, the court should disregard Erdman's affidavit

because it contains nothing more than legal conclusions concerning the '482 patent.

Examining the record, the court determines that there is insufficient evidence suggesting a conflict of interest or bias to exclude Erdman's affidavit from the record. In addition, the court rejects AIP's alternative argument and gives Erdman's statements the weight it determines those statements deserve.

## B. Alleged Infringement of '482 Patent

DF & R asserts that the court should deny both parties' motions with respect to the '482 patent because there exist material issues of fact concerning the alleged infringement. AIP maintains that there are no material facts in dispute and that the summary judgment in its favor is warranted. AIP thus requests that the court grant its motion for summary judgment on its claim that the RM–401CL does not infringe the '482 patent.

The '482 patent claims describe the means for performing various functions.[5] In general, interpretation of a means element involves consideration of the same factors used to construe elements and limitations using non-means language. *Medtronic, Inc. v. Intermedics, Inc.*, 799 F.2d 734, 742 (Fed. Cir.) (citation omitted), *cert. denied*, 479 U.S. 1033, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987). The court therefore applies the infringement standard previously set forth. The court, however, will not construe a means element to cover all possible means for performing a step or function. *Jonsson v. Stanley Works*, 903 F.2d 812, 819 (Fed.Cir.1990). In determining what the means element covers, the court also examines the disclosed structure in the patent specification that performs the step or function in question. The means element will be construed to cover the specific structure disclosed in the specification and any equivalents of that structure. 35 U.S.C. § 112 para. 6; *Pennwalt*, 833 F.2d at 934 ("[T]he court must compare the accused structure *with the disclosed structure*, and must find equivalent *structure* as well as *identity* of claimed *function* for that structure.") (emphasis in the original) (citations omitted).

---

5. Such patent claims are authorized under 35 U.S.C. § 112 para. 6. Section 112 provides, in part, that:

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112 para. 6.

The device described in the '482 patent is set forth in the following diagrams:

FIG. 2

FIG. 3

Viksnins Aff., Exh. B ('482 patent figures 2 and 3).

### (1) Hinge Means

■ The '482 patent asserts two independent claims, claims 1 and 10. Claim 1 describes a:

hinge means for pivotally connecting said mounting portion to said support portion, forming an angle there between, whereby the angle of the support portion with respect to the mounting portion is variable[.]

Viksnins Aff., Exh. B ('482 patent col. 5 lines 11–15). Claim 10 describes a:

hinged means for pivotally connecting an edge of said mounting portion to an edge of said support portion, whereby the angle of the support portion with respect to the mounting portion, and thus with the windshield, is variable[.]

Viksnins Aff., Exh. B ('482 patent col. 6 lines 35–39). The hinge means claim limitations in claims 1 and 10 are means elements and, as previously stated, the court must construe those elements to cover the specific structure disclosed in the specification and any equivalents of that structure.

The specification of the '482 patent sets forth the structure of the "hinge means" described in claims 1 and 10:

As best shown in FIG. 2, mounting plate 30 of the preferred embodiment has a substantially "T" shaped configuration. This configuration eliminates unnecessary weight by cutting out non-functional portions of the mounting bracket. The "T" configuration includes a cross bar 32 and a stem 34. Attached at both ends of the tip of the cross bar 32 are cylindrical flanges 36. The cylindrical flanges 36 include axial longitudinal throughbores and advantageously are dimensioned to cooperate with the cylindrical extension 28 to form a hinge. A bolt 38 extends through the axial throughbores of flanges 36 and extension 28 and serves as a hinge pin about which support portion 20 and mounting portion 30 pivot.

Viksnins Aff., Exh. B ('482 patent col. 3 lines 53–65). Thus, the hinge described in the '482 patent only allows one degree of rotational freedom between the two parts connected by the joint.

The RM–401CL, depicted below, contains no structure similar to the hinge described in the '482 patent.

Duescher Joint Decl., Exh. 2. The RM–401CL uses a spherical joint that allows for three degrees of rotational freedom. The court thus finds that the structure of the rotational mechanism in the two devices differ and the spherical joint does not constitute a hinge that has one rotational degree of freedom. *See* Duescher Joint Decl. ¶¶ 19–21.

DF & R contends that the '482 patent is not "limited to a coupling arrangement having a single degree of freedom" and argues that the spherical joint used in the RM–401CL falls within the scope of the '482

patent. DF & R further argues that "[t]he important aspect of the 'hinge means for pivotally connecting said mounting portion to said support portion' is that it allows the mounting portion and support portion to be capable of being 'aligned in a wide variety of angular relationships with respect to one another.' ... The ball and socket used in AI[P]'s Model RM–401CL radar detector mount provides for such a wide variety of angular relationships." *See* DF & R Memorandum in Support of Motion for Partial Summary Judgment at p. 13–14.

The court does not find DF & R's argument persuasive. The court notes that the '482 patent specification provides:

Thus, although other means of hinging and locking the two portions of bracket 10 are within the scope of the present invention, in the preferred embodiment the bolt 38 serves as both a pivoting adjustment and a locking mechanism.

Viksnins Aff., Exh. B ('482 patent col. 4, lines 4–8). The '482 patent, however, discloses no other hinging means. Therefore, there is nothing in the '482 patent upon which to expand the scope of the "hinge means" limitations of claims 1 and 10 beyond the specific hinge structure described in the '482 patent and its structural equivalent. Accordingly, the court finds no equivalent structure between the '482 patent and the accused hinging device, *see e.g.*, *Pennwalt*, 833 F.2d at 934 ("where [a patent claim] is expressed as a means for performing a stated function, the court must compare the accused structure *with the disclosed structure*, and must find equivalent *structure* as well as *identity* of claimed *function* for that structure") (emphasis in the original), and concludes that the spherical joint contained in the RM–401CL does not infringe on the hinge means described in claims 1 and 10 of the '482 patent.

### (2) Locking Means

█ Independent claims 1 and 10 of the '482 patent also describes a:

locking means for selectively arresting said hinge means thereby to lock said support portion and said mounting portion in a predetermined angular relationship....

Viksnins Aff., Exh. B ('482 patent col. 5 lines 16–19 and col. 6 lines 40–43). The locking means claim limitation in independent claims 1 and 10 are means elements. The court therefore applies the same analysis to the locking means as it applied to the hinge means.

The specification of the '482 patent sets forth the structure of the "locking means" described in claims 1 and 10:

In the preferred embodiment, one of the cylindrical flanges 36 contains an internal thread disposed in its axial throughbore. The free end of bolt 38 is correspondingly threaded so that the bolt 8 [sic 38] can be tightened to clamp the flanges 36 against the extension 28, thereby to lock support portion 20 and mounting portion 30 in a specific, desired angular relationship.

Viksnins Aff., Exh. B. ('482 patent col. 3 line 66—col. 4 line 4).

Once the bracket 10 is secured to the windshield 12 and laterally adjusted, the bolt 38 is loosened to permit angular adjustment of support portion 20. When support portion 20 is adjusted to be substantially horizontal, the bolt 38 is again tightened to lock portion in the desired angular relationship.

*Id.* ('482 patent col. 4 lines 30–36). Thus, the lock between the support and mounting portions in the device described in the '482 patent becomes operational by tightening bolt 38, thereby increasing the friction 36 and extension 28. The device is unlocked by unscrewing bolt 38 to reduce the friction between flanges 36 and extension 28.

Examining the RM–401CL, the court determines that it contains no locking device whereby a user can selectively increase or decrease friction between two parts to effect a lock. The RM–401CL's spherical joint is sized such that the components provide a constant or fixed friction between the "ball" and "socket." *See* Duescher Joint Decl. ¶ 26. "To adjust the RM–401CL, sufficient force must be exerted to overcome the fixed friction between the ball and socket.... [AIP's] device has no structure for increasing or decreasing the friction between two parts, but simply uses the inherent fixed friction between the ball and socket to position the

two parts relative to each other." *Id.* ¶¶ 26–27. The court thus concludes that the locking mechanisms contained in the two devices are structurally different.

DF & R contends that "the '482 patent is specifically not ·limited to a locking means that can increase or· decrease friction between the mounting portion and support portion of the bracket...." *See* DF & R Memorandum in Support of Motion for Partial Summary Judgment at 14. DF & R notes that "[t]he specification of the '482 patent specifically states that a variety of ways for locking the support portion and mounting portion are possible and are within the scope of the patented invention" and argues that "[t]he claims merely recite the requirement that the locking means 'lock said support portion and said mounting portion in a predetermined angular relationship.'" *Id.* DF & R thus argues that because the mechanism employed in the RM–401CL achieves the same result as that in the '482 patent, AIP's device infringes the '482 patent.

The court does not find DF & R's argument persuasive. As previously stated, the '482 patent specification provides:

> Thus, although other means of hinging and locking the two portions of bracket 10 are within the scope of the present invention, in the preferred embodiment the bolt 38 serves as both a pivoting adjustment and a locking mechanism.

Viksnins Aff., Exh. B ('482 patent col. 4, lines 4–8). The '482 patent, however, discloses no other locking means. Therefore, there is nothing in the '482 patent upon which to expand the scope of the "lock means" limitations of claims 1 and 10 beyond the specific locking structure described in the '482 patent and its structural equivalent. Accordingly, the court finds no equivalent structure between the '482 patent and the accused locking device, *see e.g., Pennwalt,* 833 F.2d at 934 ("where [a patent claim] is expressed as a means for performing a stated function, the court must compare the accused structure *with the disclosed structure,* and must find equivalent *structure* as well as *identity* of claimed *function* for that structure") (emphasis in the original), and concludes that the locking mechanism contained in the RM–401CL does not infringe on the locking means described in claims 1 and 10 of the '482 patent. Thus, based on the foregoing, the court determines that the RM–401CL does not infringe the '482 patent and grants AIP's motion for summary judgment with respect to that particular claim.

### 3. AIP's Alternative Design

▉ AIP has designed an alternative to the RM–401CL's spherical joint. AIP intends to manufacture a radar mount containing the alternative design should the court order it to discontinue the manufacture and sale of the RM–401CL. AIP disclosed the alternative design to DF & R's counsel and asked for assurance that the alternative design does not infringe the '482 patent· or the '120 patent. DF & R refused to provide that assurance. AIP now asks the court to declare whether its alternative. design infringes either the '482 patent or the '120 patent.

The court denies AIP's request. The court determines that AIP's motion for summary judgment with respect to its proposed alternative design constitutes a request for an advisory opinion because there is no actual controversy and, as such, does not present a justiciable case or controversy on which the court can pass judgment. *See e.g., Spectronics Corp. v. H.B. Fuller Co.,* 940 F.2d 631, 633 (Fed.Cir.) ("The existence of an actual controversy is an absolute predicate for declaratory judgment jurisdiction."), *cert. denied,* — U.S. —, 112 S.Ct. 658, 116 L.Ed.2d 749 (1991). Even if AIP·had filed a counterclaim for declaratory judgment on the proposed alternative design, the court may exercise jurisdiction over such a claim under 28 U.S.C. § 2201 only if there is an actual controversy "of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts." *Ashwander v. Tennessee Valley Auth.,* 297 U.S. 288, 325, 56 S.Ct. 466, 473, 80 L.Ed. 688 (1936). Moreover, in cases ·involving a ·declaratory judgment of patent noninfringement, the prerequisite for ruling on such a matter is that "the accused infringer must have actually produced or prepared to produce an. allegedly infringing product ... [and] the patent holder's conduct must

create an objectively reasonable apprehension on the part of the accused infringer that the patent holder will initiate suit if the allegedly infringing activity continues." *Spectronics,* 940 F.2d at 634 (citations omitted). AIP satisfies none of those requirements. Accordingly, the court denies AIP's motion for summary judgment on its alternative design.

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. DF & R's motion for summary judgment on infringement of the '120 patent is granted;

2. DF&R's motion for summary judgment on infringement of the '482 patent is denied;

3. AIP's motion for summary judgment on the affirmative defense of intervening rights, its fourth amended counterclaim, is denied;

4. AIP's motion for summary judgment concerning noninfringement of the '482 patent is granted; and

5. AIP's request for a declaration of noninfringement of its proposed alternative design is denied.