PENNSAUKEN SENIOR TOWERS URBAN RENEWAL ASSOCIATES, LLC., and Housing Authority of The Township of Pennsauken, Plaintiffs,

v.

UNITED STATES, Defendant.

Nos. 07–174C, 07–646C.

United States Court of Federal Claims.

Sept. 18, 2008.

---

**624**

Fred J. Livingstone, Taft Stettinius & Hollister LLP, Cleveland, OH, for plaintiffs. With him on the brief were Mark J. Valponi and Majeed G. Makhlouf, Taft Stettinius & Hollister LLP, Cleveland, OH.

Armando A. Rodriguez–Feo, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for defendant. With him on the briefs were Gregory G. Katsas, Assistant Attorney General, Civil Division, and Jeanne E. Davidson, Director, and Brian M. Simkin, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C.

## OPINION AND ORDER

CHARLES F. LETTOW, Judge.

Plaintiffs have contracts with the United States, acting through the Department of Housing and Urban Development ("HUD"), under the "Section 8" housing program. Plaintiffs Haddon Housing Associates, LLC, and the Housing Authority of the Township of Haddon, New Jersey (collectively referred to as "Haddon"), filed a complaint on September 4, 2007, against the United States for breach of a Housing Assistance Payments

Contract ("HAP Contract").[1] Haddon sought damages based on the alleged failure of HUD to provide automatic annual rent increases under the HAP Contract beginning in 2001. Compl. ¶ 1.[2] The government has filed a motion to dismiss those portions of Haddon's claim that reach back to the months before the anniversary of the contract occurring in March 2002, contending that the applicable six-year statute of limitations, 28 U.S.C. § 2501, bars such claims. Defendant's Mot. to Dismiss in Part ("Def.'s Mot.") at 2. Haddon contests the government's interpretation of administrative regulations that bear on the contractual terms relating to the anniversary date, and argues that it is entitled to adjusted rent for the six months at the end of the 2001 anniversary year which fall within the six-year statute of limitations. Plaintiffs' Br. in Opp'n to Def.'s Mot. to Dismiss ("Pls.' Br.") at 1–2.

A hearing on the resulting issue was held on August 20, 2008, and supplemental administrative materials were filed on August 22, 2008.

## BACKGROUND[3]

Section 8 of the United States Housing Act of 1937, codified as amended at 42 U.S.C. § 1437f, established a new housing assistance program through which HUD subsidizes the rents of low-income individuals and families living in privately owned dwelling places. *See* 42 U.S.C. § 1437f(a). Under the statutory arrangements for the Section 8 program, building owners enter into HAP Contracts that obligate HUD to pay rent subsidies on behalf of families living in the buildings. *See Brown Park Estates–Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1450–51 (Fed. Cir.1997) (canvassing the statutory and regulatory scheme). The rent payable under these HAP Contracts is set and adjusted on a periodic basis by HUD:

---

1. On October 5, 2007, the court ordered the consolidation of two cases, *Pennsauken Senior Towers Urban Renewal Associates, LLC, et al. v. United States*, No. 07–174C (Fed.Cl.), and *Haddon Housing Associates, et al. v. United States*, No. 07–646C (Fed.Cl.). Each of these cases relates to a HAP Contract. This opinion and order concerns only the claims advanced by Haddon.

2. References to "Compl. ¶——" are to the complaint filed in the *Haddon* case, No. 07–646C.

3. The recitations that follow do not constitute findings of fact by the court. Rather, the recited factual elements are either undisputed or are alleged and assumed to be true because they are uncontested.

HAP contracts specify maximum monthly rents for the dwelling units being subsidized—known as "contract rents"—which the owner is entitled to receive for each dwelling unit for which rental assistance payments are to be made.... The contract rent is initially set by HUD to approximate the fair market value of the rental property for the local area, taking into account certain adjustments to reflect additional costs associated with complying with Section 8 requirements. In addition to setting initial contract rents, HUD is responsible for adjusting the contract rents on at least an annual basis.

*Brown Park,* 127 F.3d at 1451 (citations omitted).

On March 17, 1981, Haddon entered into a contract with the United States for the Rohrer Towers II Apartment Complex. Compl., Ex. B (Rohrer Towers II HAP Contract ("Rohrer Contract")). The Rohrer Contract set an initial rental rate, and specified that this contractual rent would be automatically adjusted each year, based upon annual adjustment factors ("AAFs") published by HUD:

(b) *Annual Adjustments.*

(1) Upon request from the Owner to the CA [Contract Administrator], Contract Rents will be adjusted on the anniversary date of the Contract in accordance with 24 CFR [Part] 888 and this Contract....

(3) Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the annual adjustment result in Contract Rents less than the Contract Rents on the effective date of the Contract.

Rohrer Contract § 2.7(b). The federal regulation invoked by the Rohrer Contract, 24 C.F.R. Part 888, addresses the means by which HUD adjusts rents under its contracts:

The adjusted monthly amount of the Contract Rent of a dwelling unit shall be determined by multiplying the Contract Rent

in effect on the anniversary date of the contract by the applicable Automatic Annual Adjustment Factor....

24 C.F.R. § 888.203(b). The method for computing the AAF is set out in 24 C.F.R. § 888.203(a).

Initially, Congress required HUD to adjust monthly rents on an annual basis. *See Statesman II Apts., Inc. v. United States,* 66 Fed.Cl. 608, 610–11 (2005) *("Statesman I")* (citing 42 U.S.C. § 1437f(c)(2)(A) (1976)). "Beginning in the early 1980s, HUD would conduct 'comparability studies' in those markets in which it believed automatic adjustments to assisted units had resulted in materially higher rents than those for comparable unassisted units." *Id.* at 611 (citing *Cisneros v. Alpine Ridge Group,* 508 U.S. 10, 14, 113 S.Ct. 1898, 123 L.Ed.2d 572 (1993)). The use of comparability studies to cap rents was challenged by owners, but Congress in 1988 explicitly authorized HUD to conduct comparability studies. *Id.* (citing Housing and Community Development Act of 1987, Pub.L. No. 100–242, § 142(c)(2)(B), 101 Stat. 1815, 1850 (1988)). Further amendments enacted in 1989 authorized HUD to use comparability studies to limit rent increases based upon AAFs. *Id.* at 611–12 (citing Department of Housing and Urban Development Reform Act of 1989, Pub.L. No. 101–235, § 801(c), 103 Stat.1987, 2058 (1989)); *see also Cisneros,* 508 U.S. at 21, 113 S.Ct. 1898 (holding that the 1989 amendments did not constitute a breach of owners' HAP contracts). Then, in 1994, Congress shifted to owners the burden of proving that there would be no "material differences" between the adjusted rent under a HAP Contract and the rent for a comparable unassisted unit. *See* Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act of 1995, Pub.L. No. 103–327, 108 Stat. 2298, 2315 (1994) *(amending* 42 U.S.C. § 1437f(c)(2)(A)); *see also Statesman II Apts., Inc. v. United States,* 71 Fed.Cl. 662, 665 (2006) *("Statesman II")* (describing the 1994 Act).[4] HUD thereafter

---

4. A set of decisions has held that the congressional alteration in 1994 of the way in which rent increases were to be determined constituted a breach of existing HAP Contracts. *See Park*

*Props. Assocs., L.P. v. United States,* 82 Fed.Cl. 162, 167, 169 & n. 7 (2008) *("Park Properties II")* (citing *Park Props. Assocs., L.P. v. United States,* 74 Fed.Cl. 264, 273–76 (2006) *("Park Properties*

issued Notice 95–12, Annual Adjustment Factor Rent Increase Requirements Pursuant to the Housing Appropriations Act of 1995 (March 7, 1995), which provided that

> [i]f current project rents on a ... contract (before the application of the AAF) are above the published [fair market rent] for the area then in order to receive a rent increase, the owner must submit, at least 60 days prior to the HAP contract anniversary date, form HUD 92273, Estimates of Market Rent by Comparison.... This form must contain at least three examples of unassisted housing in the same market of similar age, type and quality.

Joint Notice of Additional Authority (Aug. 22, 2008), Ex. A, Notice 95–12 ("Notice 95–12"), at 3. Under the new statutory scheme, the government continued to publish AAFs, but began to apply these factors "upon request of the owner, not automatically." *Brown Park*, 127 F.3d at 1452 n. 8. Notice 95–12 also addressed the posture of building owners who failed to submit the requisite information prior to the contract anniversary date. Notice 95–12 at 3. New rent levels became effective for those owners 60 days after the information was received, so long as the information was submitted prior to the next anniversary date:

> If the owner fails to submit the information required by this Notice at least 60 days before the contract anniversary date, then the rent levels will not be adjusted on the contract anniversary date, rather the new rent levels will go into effect 60 days after receipt of the required information. However, if the owner fails to submit this information by the date of [the following year's] HAP contract anniversary, then no increase will be granted for the [present] contract year.

Notice 95–12 at 3.

The Rohrer Contract was affected by this series of changes in the governing law and policy. The Rohrer Contract became effective on March 17, 1981, Compl., Ex. B (Rohrer Contract) § 1.1(a); this date represents the "anniversary date" of that contract. At the date of origin of the Rohrer Contract, the initial contractual rent for one-bedroom units on the property was $493 per month, which was 20% higher than the rent for comparable unassisted properties. Compl. ¶ 8. This initial difference "permit[ted] the property owners to be compensated for the additional costs of complying with and participating in the Section 8 program." *National Leased Hous. Ass'n v. United States,* 105 F.3d 1423, 1435 (Fed.Cir.1997). Between 1980 and 1995, the contractual rent under the Rohrer Contract was increased from $493 to $860 for one-bedroom units. Compl. ¶ 20. From anniversary years 1996 through 2006, no rent increases were granted. Compl. ¶ 20. In 2007, the contractual rent was increased from $860 to $889. Compl. ¶ 20. Haddon seeks damages based on the alleged failure of HUD to provide annual rent increases in the Rohrer Contract during the anniversary years between 2001 and 2007. Compl. ¶ 1.

### JURISDICTION

In filing its complaint, Haddon invoked this court's jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a). Compl. ¶ 2.[5] Respecting that jurisdictional predicate, 28 U.S.C. § 2501 establishes a six-year statute of limitations. Unlike most statutes of limitation, Section 2501 is classified not as "an affirmative defense ... that is subject to rules of forfeiture and waiver," but rather as a "more absolute" requirement affecting this court's jurisdiction. *John R. Sand & Gravel Co. v. United States,* — U.S. —, —, 128 S.Ct. 750, 753–54, 169 L.Ed.2d 591 (2008). Accordingly, the government properly invoked Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") in moving to dismiss Haddon's claims, in part, for lack of jurisdiction. The pertinent jurisdictional

---

*I"))*; *Statesman II,* 71 Fed.Cl. at 663 (citing *Statesman I,* 66 Fed.Cl. at 619–20); *see also Cuyahoga Metro. Hous. Auth. v. United States,* 57 Fed.Cl. 751, 759–60 (2003).

**5.** The Tucker Act confers jurisdiction upon this court to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a).

question is whether any part of Haddon's claims reaches back beyond the prescribed six-year limitations period.

As noted previously, Haddon filed its suit on September 4, 2007. Consequently, under 28 U.S.C. § 2501, the court has jurisdiction over any claims that accrued on or after September 4, 2001. In observance of the statute of limitations, Haddon has narrowed its claim such that "the earliest date for which a claim has been made for the adjusted rent is September 4, 2001." Pls.' Br. at 1. However, the portion of Haddon's claim extending from September 4, 2001, through the following six months falls within the 2001 anniversary year of the Rohrer contract, which began on March 17, 2001. The contested jurisdictional issue in this case thus becomes whether the portion of Haddon's claim for adjustments during the latter part of the 2001 anniversary year is barred by 28 U.S.C. § 2501 because it relates back to an anniversary date that falls outside the statute of limitations. HUD's administration of the rent-adjustment provisions of the Rohrer Contract and 24 C.F.R. Part 888 bears directly on this issue.

### A. The Contractual and Regulatory Rent–Adjustment Provisions

The parties offer differing interpretations of Section 2.7(b)(1) of the Rohrer Contract and 24 C.F.R. Part 888. In its motion to dismiss, the government contends that the specific reference to the anniversary date in the rent-adjustment provision of the Rohrer Contract indicates that an adjustment of the contract rent can take place on only that date (March 17), and thus that any claim based on HUD's alleged failure to make the annual contract rent adjustment could *not* accrue on any *other* date during the anniversary year besides the anniversary date itself. Def.'s Mot. at 5. The government interprets the contract to provide that "no adjustment would have been made for the [anniversary] year unless made on [the anniversary date]." Def.'s Mot. at 6. From this proposition, the

government concludes that Haddon has no cognizable right to damages for any of the 2001 anniversary year (which extends from March 16, 2001 to March 15, 2002), because Haddon did not file its complaint until September 4, 2007, thus rendering the March 16, 2001 anniversary date outside the six-year statute of limitations for suits under the Tucker Act. Def.'s Mot. at 5–6.[6]

In response, Haddon avers that Section 2.7(b) of the Rohrer Contract must be construed in accord with 24 C.F.R. § 888.203(b), which is incorporated into that contractual provision and which "broadly applies to any month." Pls.' Br. at 2. Haddon acknowledges the provision in the Rohrer contract that rent adjustment will take place "on the anniversary date of the Contract," but emphasizes that the same contractual sentence provides that contractual rents are to be adjusted "in accordance with 24 C.F.R. [Part] 888." Pls.' Br. at 2 (quoting Rohrer Contract § 2.7(b)(1)). Haddon argues that 24 C.F.R. § 888.203 lacks any indication that the month in which rent adjustment occurs can only be "the month in which the anniversary date falls." Pls.' Br. at 2. Instead, Haddon contends that the reference in the regulation to an "adjusted *monthly* amount," 24 C.F.R. § 888.203(b) (emphasis added), suggests that the contract requires the AAF calculation to be performed on a monthly rather than a yearly basis. Hr'g Tr. 19:20 to 20:9.

Section 888.203 refers to an "adjusted monthly amount," but an intractable ambiguity exists on the face of the Rohrer Contract and 24 C.F.R. § 888.203 as to whether *changes* in the monthly rent can be made on a monthly basis or solely on an annual basis. The court is unable to determine on the face of the contract and regulation whether monthly rent adjustments can be made during an anniversary year or solely at the outset of such year. This dispute over interpretation of contractual and regulatory language in essence turns on the administrative

---

6. The government additionally seeks to preclude Haddon from calculating damages for subsequent years based upon "the consequential effects of the alleged improper failure of HUD to adjust contract rents in 2001." Def.'s Mot. at 6. This argument rests on a subsidiary holding of

*Brown Park* that plaintiffs can sue based upon events that occurred within the six years immediately preceding the suit but could not rely upon breaches outside that period to establish a baseline for damages. *See Brown Park,* 127 F.3d at 1458–59.

procedures that HUD has actually been following in the course of settling disputes over HAP Contract rents. It is axiomatic that an agency's interpretation of its own regulation is controlling unless "plainly erroneous or inconsistent with" the regulations being applied. *Long Island Care at Home, Ltd. v. Coke*, —— U.S. ——, ——, 127 S.Ct. 2339, 2349, 168 L.Ed.2d 54 (2007) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945)); *see also Haas v. Peake*, 525 F.3d 1168, 1186–88 (Fed.Cir.2008) (court must defer to an agency's interpretation of its own regulations "unless an alternative reading is compelled by the regulation's plain language or by other indications of the [agency's] intent at the time of the regulation's promulgation") (quoting *Gardebring v. Jenkins*, 485 U.S. 415, 430, 108 S.Ct. 1306, 99 L.Ed.2d 515 (1988)); *cf. Yankee Atomic Elec. Co. v. United States*, 536 F.3d 1268, 1278 (Fed.Cir.2008) (citing *Christensen v. Harris County*, 529 U.S. 576, 588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000), for the principle that deference to an agen-cy's interpretation of its own regulation is "warranted only when the language of the regulation is ambiguous"). The court accordingly will look to HUD's interpretation of its own regulation to guide resolution of the contractual and regulatory ambiguity.[7]

## B. HUD's Interpretation Embodied in Notice 95–12

■ In Notice 95–12, HUD addressed the question whether the adjustment of contract rents occurs strictly on an annual basis, or whether such adjustments can be made at any date during the anniversary year. The Notice was issued by HUD on March 7, 1995, "[t]o effect all applicable contracts with HAP anniversary dates from [March 7, 1995] to the end of Federal FY 1995." Notice 95–12 at 1.[8] Although Notice 95–12 specified that it would be in effect only through September 30, 1995, notices in subsequent years "reinstated and made permanent its provisions." *Park Properties II*, 82 Fed.Cl. at 166 (citing HUD Notice 97–14 (March 17, 1997) and HUD Notice 00–14 (Aug. 9, 2000)); *see also*

7. Haddon makes three other arguments aimed at construing the language of the Rohrer Contact in light of the federal regulation. First, Haddon invokes the canon that when language in a federal regulation conflicts with language in a contract that is subject to that regulation, the federal regulation trumps the contractual language. Pls.' Br. at 3 (citing *Beta Systems, Inc. v. United States*, 838 F.2d 1179 (Fed.Cir.1988), and *Chris Berg, Inc. v. United States*, 192 Ct.Cl. 176, 183, 426 F.2d 314 (1970)). However, the language in Section 2.7(b)(1) of the Rohrer Contract need not necessarily be construed to conflict with the regulation. Ordinarily, where a contract implements or fulfills a statutory or regulatory requirement, the interpretation of the contract will be guided by the underlying statute or regulation. *See The Dalles Irr. Dist. v. United States*, 82 Fed.Cl. 346, 355 (2008) (collecting cases). Here, however, the contract was entered before the revised statutory underpinnings were enacted and the implementing regulations were adopted. In the circumstances, the contractual language conceptually could be, but actually appears not to be, in conflict with the revised statute and regulations. Second, Haddon argues that when a regulatory provision is intended to benefit a certain class of persons, the Government is not authorized to alter that provision by contrary contractual language. Pls.' Br. at 3. *Cf. Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967) (articulating the "familiar canon of statutory construction that remedial legislation should be construed broadly to effec-

tuate its purposes"); *Rough Diamond Co. v. United States*, 173 Ct.Cl. 15, 351 F.2d 636, 639–43 (1965) (contractor not entitled to reformation of contract made in contravention of regulatory scheme because contractor was not one of intended beneficiaries of the regulatory arrangement). Finally, Haddon suggests that where documents contain inconsistent language, any inconsistencies must be construed against the drafter, and, because the government drafted both the regulation and the contract, the inconsistency must be construed in Haddon's favor. Pls.' Br. at 3–4 (citing *Hills Materials Co. v. Rice*, 982 F.2d 514 (Fed.Cir.1992)). This argument, however, is subsumed in the general proposition that an ambiguous contractual provision should be construed in accord with a correlative regulatory provision if one exists.

8. Notice 95–12 was issued in response to Pub.L. No. 103–327, "Department of Veterans Affairs and Housing and Urban Development and Independent Agencies Appropriations Act, 1995." *See* Notice 95–12 at 1. As HUD stated in the Notice, "[a]mong the many measures developed in this bill, emphasis was placed on utilizing the mechanism in the Section 8 contract language which permits an analysis on the reasonableness of the AAF formula as it is applied to each project unit type." *Id.* As noted *supra*, at 3–4, Pub.L. No. 103–327 instituted a requirement that a building owner actively request an adjustment of rent at least sixty days prior to the contract anniversary date.

Joint Notice of Additional Authority (Aug. 22, 2008) ("The parties agree that the expiration date of Notice 95–12 has been extended indefinitely."). In practice, since March 1995, HUD has applied the annual rent adjustment provision in HAP Contracts based upon the regimen set forth in Notice 95–12.

Notice 95–12 specifies the dates on which contract rents can be adjusted and describes the consequences when a building owner fails timely to file a request for a rent adjustment. Notice 95–12 at 3. Notice 95–12 specifies that if an owner fails to request an adjustment before the anniversary date, HUD will *still permit the rent adjustment to take place* after the submission of the necessary information, so long as the information is submitted before the *next* anniversary date. *See* Notice 95–12 at 3, quoted *supra*, at 626. Plaintiffs cite this specification as evidence that HUD was

> talking about something midyear, and they also use that same language in dealing with the situation where the contract rents do not exceed the published fair market rents, so HUD clearly in its practice and in its contemplation under 95–12 contemplated midyear adjustments. As a matter of fact, they even contemplated mid-month adjustments.

Hr'g Tr. 25:3–9. Notice 95–12 thus serves as a strong indication that the "monthly amount" of a contract rent can be adjusted at times of the contract anniversary year other than on the anniversary date itself.

The government protests that no one is alleging that Haddon actually submitted a late request for a contract rent adjustment, and, even if Haddon had done so, HUD would not have been obligated to grant the request. Hr'g Tr. 13:25 to 14:4. That argument goes to the merits of whether the 1994 congressional changes to the Section 8 program breached existing HAP Contracts. *See, supra*, at 625–26 n. 4. As to the jurisdictional issue now before the court, the very fact that HUD advised that it could and would grant post-anniversary-date requests

for rent adjustments satisfies the court that Haddon can claim rent adjustments for a portion of a particular anniversary year after the anniversary date of that year. Notice 95–12 represents a permissible construction of the relevant regulation, 24 C.F.R. § 888.203, and Section 2.7(b) of the Rohrer Contract, and it is neither contrary to the regulation nor the contractual provision. Notice 95–12 constitutes a rational means for HUD to have implemented its congressional directives, and, consequently, the court considers that Notice 95–12 serves as the controlling interpretation of 24 C.F.R. § 888.203 and the Rohrer Contract.[9]

The court thus rejects the government's contention that Haddon's claim for adjustment of contract rents in 2001 could only have arisen on the contract anniversary date of March 17, 2001. Applying HUD's interpretation set out in Notice 95–12, the court finds merit in Haddon's contention that HUD contemplated mid-year adjustments to contractual rents under HAP Contracts. Contractual rents for the 2001 anniversary year could have been adjusted during the months on or after September 4, 2001, meaning that a claim based on HUD's failure to make such adjustments for those months would have accrued within the six-year limitation period provided under 28 U.S.C. § 2501 for the Tucker Act.

## CONCLUSION

The government's motion to dismiss is DENIED. The parties shall file a joint status report on or before October 20, 2008, setting out a proposed plan and schedule for future proceedings to reach a resolution of these consolidated cases.

It is so ORDERED.

---

9. The fact that HUD reached its interpretation of its regulations through a means less formal than notice-and-comment rulemaking or a formal administrative adjudication "does not ... deprive

that interpretation of the judicial deference otherwise ... due." *Barnhart v. Walton*, 535 U.S. 212, 221, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002).