# In The United States Court of Federal Claims

No. 04-1757C

**This Opinion and Order Will Not Be Published in the U.S. Court of Federal Claims Reporter Because It Does Not Add Significantly to the Body of Law.**

(Filed:  September 19, 2014)

————————

|  |  |
|---|---|
| PARK PROPERTIES ASSOCIATES, L.P., et al., | * |
|  | * |
|  | * |
| Plaintiffs, | * |
|  | * |
| v. | * |
|  | * |
| THE UNITED STATES, | * |
|  | * |
| Defendant. | * |
|  | * |

————————

**OPINION and ORDER**

————————

**ALLEGRA, Judge:**

This contract case is pending before the court on the parties' cross-motions for partial summary judgment on damages.  Plaintiffs entered into rent subsidy agreements with the United States Department of Housing and Urban Development (HUD), known as "Housing Assistance Payment" (HAP) contracts.  This court previously determined that defendant repudiated those contracts in 1994, when Congress amended the controlling statute to alter the way in which rent increases were to be determined.  *Park Props. Assocs., L.P. v. United States*, 74 Fed. Cl. 264, 265-66 (2006) (*Park Properties I*).  Later, the court held that a limitation found in the HAP contracts could not be applied to limit the damages owed by defendant.  *Park Props. Assocs., L.P. v. United States*, 82 Fed. Cl. 162, 176 (2008) (*Park Properties II*).

The court stayed resolution of the pending cross-motions until the Federal Circuit decided *Haddon Housing Associates Ltd. Partnership v. United States*, 711 F.3d 1330 (Fed. Cir. 2013).  Following the issuance of that opinion, the parties have agreed that:  (i) Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriation Act of 1995, Pub. L. No. 103-327, 108 Stat. 2298, 2315 (1994) (the 1994 Act), as implemented by HUD, breached provisions in plaintiffs' HAP contracts; (ii) the Overall Limitation provision

found in plaintiffs' HAP contracts cannot be applied to reduce plaintiffs' rent adjustments for purposes of calculating damages herein; and (iii) the provision of the 1994 Act that required a deduction in adjustments for units that did not turnover cannot be applied to reduce plaintiffs' rent adjustments for purposes of calculating their damages. As will be discussed below, three issues remain in dispute.

A detailed recitation of the background facts in this case may be found in this court's prior opinions. *See Park Properties II*, 82 Fed. Cl. at 164-67; *Park Properties I*, 74 Fed. Cl. at 266-70. The court will not restate these facts, but instead hereby incorporates, by reference, these prior recitations.

The first issue presented by the parties' pending motions regards the applicability of the six-year statute of limitations found in 28 U.S.C. § 2501 to plaintiffs' claims. The question is whether plaintiffs are entitled to recover damages for the so-called "stub period," that is, the period between December 10, 1998 (the date that is six years prior to the date they filed this suit), and the immediately succeeding anniversary dates in the relevant HAP contracts. Defendant argues that these damages should be barred because they relate back to an anniversary date that falls outside the statute of limitations. Plaintiffs, however, rely on *Pennsauken Senior Towers Urban Renewal Associates, LLC v. United States*, 83 Fed. Cl. 623, 629 (2008), in which Judge Lettow concluded that such "stub period" damages were recoverable. Finding *Pennsauken* (and its progeny) persuasive, the court hereby adopts the analysis therein and rules in favor of plaintiffs on this issue. *See Ocean View Towers Assocs., Ltd. P'ship*, 88 Fed. Cl. 169, 175-78 (2009); *Cathedral Square Partners Ltd. P'ship v. S.D. Hous. Dev. Auth.*, 2011 WL 43019, at *13 (D.S.D. Jan. 5, 2011); *see also Haddon Hous. Assocs.*, 711 F.3d at 1340-41 (indicating that *Pennsauken* "provided a succinct analysis of [this] jurisdictional issue," but declining to reach the merits); *cf. One & Ken Valley Hous. Grp. v. Main St. Hous. Auth.*, 2012 WL 1458202, at *25 (D. Me. Apr. 17, 2012), *aff'd*, 716 F.3d 218 (1st Cir. 2013), *cert. denied*, 134 S. Ct. 986 (2014); *Greenleaf Ltd. P'ship v. Ill. Hous. Dev. Auth.*, 2010 WL 3894126, at *8 (N.D. Ill. Sept. 30, 2010).

The second issue focuses on whether plaintiffs can recover for payments due from HUD on vacant units. While both parties agreed that HUD did not pay any of the eighty percent owed on the vacant units, defendant argues that plaintiffs are not entitled to receive any damages for vacant units because they failed to file monthly claims for contract rent subsidies for those units, as required by HUD. Plaintiffs did not address this issue in their briefs. But, this was understandable as defendant did not address this issue until the supplemental briefing in the *Haddon* case – and then proceeded without any supporting affidavits.[1] In the court's view, defendant's delay in pressing this argument waived this issue, leading to the conclusion that

---

[1] In its supplemental brief, defendant stated: "[D]uring our discussions with plaintiffs, we learned, for the first time, that plaintiffs have not received subsidy payments for vacant units in the real world because plaintiffs have not filed monthly claims for contract rent subsidies for their vacant units. In light of this fact, we question whether plaintiffs are entitled to receive *any* damages for the days during which their units were vacant." (Emphasis in original).

plaintiffs are entitled to the payments in question.  *See Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276, 1284 (Fed. Cir. 2005) ("Attorney argument is no substitute for evidence."); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1581 (Fed. Cir. 1989) ("Attorneys' argument is no substitute for evidence."); *In re Budge Mfg. Co.*, 857 F.2d 773, 776 (Fed. Cir. 1988) (statements of attorney are "no evidence"); *Mel Williamson, Inc. v. United States*, 229 Ct. Cl. 846, 848 (1982) ("Argument is not fact.").

The final issue focuses on whether plaintiffs are entitled to lost profit damages associated with the reduced rents in their renewal HAP contracts.  However, a careful review of the complaint and the other filings in this case reveals that plaintiffs did not raise this claim in their complaint.  As this claim was not properly raised, in the court's view, this issue has been waived. *See Casa de Cambio Comdiv S.A., de C.V. v. United States*, 291 F.3d 1356, 1366 (Fed. Cir. 2002), *cert. denied*, 538 U.S. 921 (2003) (rejecting claim that "was not properly raised" as "[n]o mention of this theory appears in [the] complaint"); *McVey Co. v. United States*, 111 Fed. Cl. 387, 399 n.10 (2013); *Englewood Terrace Ltd. P'ship v. United States*, 86 Fed. Cl. 720, 728 (2009); *see also Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 800 (Fed. Cir. 1990). (As the old adage goes, "what is sauce for the goose is sauce for the gander.")

Even if this claim were properly pled, there is a fundamental problem with plaintiffs' claim in terms of foreseeability and, in particular, the notion that it was foreseeable that the parties would renew their contracts based upon the rents under the original contract and the extensions thereof.  To recover lost profits, plaintiffs must show that the profits were reasonably foreseeable or actually foreseen by the breaching party at the time of the contracting.  *See Anchor Sav. Bank, FSB v. United States*, 597 F.3d 1356, 1361 (Fed. Cir. 2010); *Energy Capital Corp. v. United States*, 302 F.3d 1314, 1324-25 (Fed. Cir. 2002); *see also* Restatement (Second) of Contracts § 351 (1981); *Franconia Assocs. v. United States*, 61 Fed Cl. 718, 746 (2004). Plaintiffs cannot hope to make this showing primarily because the damages they seek relate not to the original contract, but to subsequent renewal contracts – contracts that neither party envisioned when the original contracts were signed, that no party was forced to sign and that plaintiffs could have rejected.  These renewal contracts, indeed, arose under a statutory regime that was not adopted by Congress until 1997.  *See* Multifamily Assisted Housing Reform and Affordability Act of 1997 (MAHRA), Pub. L. No. 105-65, 111 Stat. 1344 (1997); 42 U.S.C. § 1437f note.[2]  That plaintiffs chose to proceed on terms that they now view as unfavorable provides no legal basis upon which they may predicate their request for lost profits.  In other words, the lost profits in question were not reasonably foreseeable and no recovery on this claim is allowed.

---

[2] In its supplemental brief, plaintiffs asserted that Congress' adoption of MAHRA effectively made the renewal of the contracts mandatory.  They asserted that various criteria (*e.g.*, the availability of adequate and affordable housing) required this result.  Plaintiffs, however, did not provide any real details as to how the detailed provisions of MAHRA required this result.  *See* MAHRA, § 515.  A review of the statute suggests that property owners, like plaintiffs, had a choice – they could renew their contracts or provide tenants with notices of their intent not to renew.  MAHRA, §§ 514(d), 515(c); *see also* 24 C.F.R. § 402.8.  That plaintiffs eventually chose to renew their contracts does not alter this fact.

Based on the foregoing, the court **GRANTS**, in part, and **DENIES**, in part, plaintiffs' motion for summary judgment and **GRANTS**, in part, and **DENIES**, in part, defendant's motion for summary judgment.  On or before October 15, 2014, the parties shall file a joint status report indicating how this case should proceed.

      **IT IS SO ORDERED**.


s/Francis M. Allegra
Francis M. Allegra
Judge